UNITED STATES of America, Plaintiff–Appellee,

v.

Dennis EVANS, Defendant–Appellant.

No. 99–3696.

United States Court of Appeals, Sixth Circuit.

July 27, 2001.

Before BOGGS and SUHRHEINRICH, Circuit Judges; CLELAND,* District Judge.

PER CURIAM.

Defendant Dennis Evans appeals his conviction and sentence for conspiracy to distribute cocaine and possession with intent to distribute cocaine. Evans was part of a street gang that sold cocaine in Columbus, Ohio, Several Codefendants and confidential informants testified against Defendant. A jury convicted Defendant of conspiracy to distribute cocaine and three counts of possession with intent to distribute. Defendant raises five issues that deal with: (1) sufficiency of the evidence of a conspiracy; (2) his acceptance of responsibility; (3) use of a firearm; (4) admission of pre-conspiracy evidence; and (5) the amount of drugs. We AFFIRM.

## I. BACKGROUND

In the late 1980's and early 1990's, Defendant Dennis Evans, Lee Gill, Anthony Rouse, Bryan Gore, Billy Coops, Norman Malone, Antwon Taylor, Stephen Washington, O'Dell Arnold, Derrick Moss, and Kevin Washington moved from Gary, Indiana, to Columbus, Ohio. Together with Andre Byrd, Marlando Hardy, Angelique McKinley, Henry Green, Anthony Williams, Louis Williams, and Deramus Thompson, who already lived in Columbus, they formed a street gang in Columbus called the Gl Boys. Gill and Rouse were leaders of the Gl Boys.

The Gl Boys sold drugs in Columbus. They used 115 East 9th Avenue in Columbus as the center of their drug operation. Rouse cooked cocaine base into crack cocaine there. Defendant, Maurice Morris, and Anthony Williams sold crack around the corner at 138 East 8th Avenue. When Defendant, Morris, Anthony Williams, and other Gl Boys needed more drugs to sell, they simply would go to 115 East 9th Avenue. Rouse also operated other crack houses in Columbus, out of which Defendant sold drugs.

After Gill was incarcerated in 1993 and then released in early 1996, he re-entered the drug business. By the summer of 1996, Gill was supplying Defendant, Morris, Hardy, and several others with crack cocaine. From 1996 through 1997, Gill supplied crack cocaine to Defendant four or five times a month, usually in amounts of a quarter ounce to an eighth of a kilogram. Defendant, in turn, then sold that crack out of various houses in Columbus.

In September of 1997, Defendant sold crack cocaine three times to an undercover detective. On September 4, 1997, Defendant sold about 1.1 grams of crack cocaine for $80 to the detective and a confidential informant. During this sale, Defendant also discussed several of the Gl Boys with the informant and told him that the police had raided one of the Gl Boys' houses in the Short North area of Columbus. On September 8, 1997, the detective again met Defendant and purchased 2.8 grams of crack cocaine from him for $147. On September 25, 1997, the detective purchased 3.2 grams of crack cocaine from Defendant for $160. During this transaction, Defendant and the detective discussed another deal for later in the day.

During the conspiracy, all of the Gl Boys, including Defendant, Rouse, Morris,

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Arnold, Washington, and Anthony Williams, carried guns. Rouse kept guns at 115 East 9th Avenue. He carried a .45–caliber and a 9–mm handgun and kept a 12–gauge shotgun behind a couch in the living room. On one occasion, Defendant, Rouse, and Anthony Williams armed themselves with guns and retrieved some missing drugs from a neighbor's house.

While Gill was in jail awaiting trial, Defendant wrote several letters to Gill. In these letters, Defendant expressed concern that Gill would testify against the Gl Boys and wanted to know if that was true.

Defendant was indicted, along with twenty other defendants, in a superseding indictment of 153 counts on October 14, 1997. Defendant was charged with conspiracy to distribute cocaine and cocaine base (crack), 21 U.S.C. Section 846 (Count 1); and possession with intent to distribute cocaine, 21 U.S.C. Section 841(a)(1) (Counts 31, 148, 151, 153). Defendant pleaded not guilty. On May 29, 1998, a jury convicted him of one count of conspiracy to distribute crack cocaine and three counts of possession of crack cocaine with intent to deliver. The district court sentenced Defendant to 262 months of imprisonment.

## II. DISCUSSION

Defendant raises five issues on appeal. However, after careful review of the record and the briefs, we find that each issue lacks merit.

### A. Motion for Judgment of Acquittal

Defendant claims that the district court erred in denying his motion for judgment of acquittal for insufficient evidence on the count of conspiracy to distribute cocaine. Defendant argues that the evidence did not support a conspiracy to sell cocaine because it only showed an association of friends in Columbus, Ohio, who had moved from Gary, Indiana. He also contends that the evidence of drug deals only showed several buyer and seller relationships rather than a conspiracy.

The test for the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989). A judgment will be reversed only if it is not supported by substantial and competent evidence in the record as a whole. *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984). Further, there is a presumption in favor of sustaining jury verdicts. *United States v. Peters,* 15 F.3d 540, 544 (6th Cir.1994). Credibility determinations are made by the fact-finder and may not be disturbed in determining whether any competent and substantial evidence supports an element of the offense. *United States v. Phibbs,* 999 F.2d 1053, 1064 (6th Cir.1993).

■ A conspiracy consists of an agreement to violate the law in which each conspirator knew of, intended to join, and participated in the conspiracy. *United States v. Welch,* 97 F.3d 142, 148–49 (6th Cir.1996); *United States v. Anderson,* 89 F.3d 1306, 1310 (6th Cir.1996). A formal agreement is not required; a tacit or material understanding to accomplish an unlawful goal is sufficient. *United States v. Myers,* 102 F.3d 227, 235 (6th Cir.1996); *United States v. Collins,* 78 F.3d 1021, 1037 (6th Cir.1996). A fact-finder may infer the existence of a drug conspiracy from the interdependence of the enterprise. *United States v. Spearman,* 186 F.3d 743, 746 (6th Cir.1999). A defendant does not have to be an active participant in

every phase of the conspiracy. On the contrary, the government need only demonstrate that the defendant was a "party to the general conspiratorial agreement." *United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986) (citation and internal quotation marks omitted). An overt act in furtherance of conspiracy under 18 U.S.C. § 846 is not required. *Spearman,* 186 F.3d at 746; *United States v. Bourjaily,* 781 F.2d 539, 544 (6th Cir.1986). The government may meet its burden of proof through circumstantial evidence. *United States v. Layne,* 192 F.3d 556, 567 (6th Cir.1999).

■ The evidence shows that Defendant knew of, intended to join, and actively participated in this conspiracy. He was involved in extensive drug dealing with Gill, Rouse, Morris, Washington, Arnold, Anthony Williams, and others. From 1996 through 1997, Gill supplied cocaine to Defendant four to five times per month, usually in amounts ranging from one quarter of an ounce to an eighth of a kilogram. Defendant also obtained crack cocaine from Rouse during this period. Defendant sold crack from several locations throughout Columbus from which other Gl Boys also sold drugs.

This circumstantial evidence was sufficient to support a finding that Defendant knew of, intended to join, and participated in the alleged conspiracy with other Gl Boys to distribute crack cocaine in Columbus, Ohio. Accordingly, we affirm the trial court's denial of Defendant's motion for judgment of acquittal on the charge of conspiracy to distribute cocaine.

### B. Admission of Evidence of Conduct Outside of the Conspiracy Period

Defendant further claims that the district court erred in admitting testimony of conduct of the Defendant occurring before the date of the conspiracy alleged in the indictment. Defendant argues that the testimony of pre-indictment activity was (1) unnecessary because it was offered to show that Defendant and the cooperating Co-defendants knew each other, which Defendant did not contest, and (2) prejudicial because it supported the existence of a conspiracy, whereas the testimony regarding the conspiracy period only supported a buyer-seller relationship. Moreover, he contends the limiting instruction given by the district court was insufficient to erase the taint of the improperly admitted evidence from the minds of the jurors.

In a related appeal involving the prosecution and conviction of other members of the Gl Boys, this Court found that the admission of evidence of drug transactions that occurred outside the period of the charged conspiracy was not proper background evidence and not admissible as "other acts" evidence, but that the admission of such evidence was harmless. *United States v. Hardy,* 228 F.3d 745, 747–751 (6th Cir.2000). We find that *Hardy* controls this case and adopt its analysis by reference. *Id.* Accordingly, we find that the evidence was improperly admitted. However, we ultimately conclude that this error was harmless, as in *Hardy,* and affirm the district court on this issue.

### C. Acceptance of Responsibility

■ Defendant contends that the district court erred in denying him a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Defendant argues that he only contested certain aspects of the conspiracy conviction at sentencing and did not contest the possession counts.

This Court reviews the determination of acceptance of responsibility for clear error. *United States v. Downs,* 955 F.2d 397, 400 (6th Cir.1992). A district court's findings

of acceptance of responsibility receive great deference. *Id.* at 400.

U.S.S.G. § 3E 1.1 provides a two-level reduction for clear acceptance of responsibility for criminal conduct by a preponderance of the evidence. *United States v. Thomas,* 74 F.3d 701, 716 (6th Cir. 1996); *United States v. Williams,* 940 F.2d 176, 181 (6th Cir.1991). Application Note 2 to U.S.S.G. § 3E1.1 provides that this reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."

However, in certain rare instances, the Guidelines permit a reduction even if a defendant has a trial "to assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1, comment. (n. 2). In these rare situations the "determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

Here, Defendant pleaded not guilty and forced the Government to try him. He did not have a trial to preserve issues not related to factual guilt. In fact, Defendant also contested relevant conduct attributed to him at the sentencing hearing. Although Defendant claims that he did not deny any sales or involvement in drug transactions at the sentencing hearing, that is immaterial because the Government had already proved that conduct. Accordingly, we affirm the district court's denial of a two-level reduction for acceptance of responsibility.

### D. Possession of a Firearm

■ Defendant also claims that the district court erred in increasing his base offense level by two levels for possessing a firearm in the course of the conspiracy pursuant to U.S.S.G. § 2D1.1(b)(1). He argues that the two-level enhancement was improper because (1) there was no conspiracy, and (2) he did not possess a firearm in connection with any conspiracy.

■ This Court reviews a district court's finding that a defendant possessed a firearm under U.S.S.G. § 2D1.1(b)(1) for clear error. *United States v. Elder,* 90 F.3d 1110, 1133 (6th Cir.1996). A defendant's base offense level for a drug offense may be increased by two levels if a dangerous weapon was possessed. U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). To enhance the base offense level "the government must establish that (1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Hill,* 79 F.3d 1477, 1485 (6th Cir.1996). Constructive possession may be shown if a defendant has ownership, dominion, or control over the firearm. *Id.* After the government shows that the defendant possessed the weapon, the burden shifts to the defendant to show it is clearly improbable that the weapon was connected to the offense. *Id.* However, if the offense is committed as part of a conspiracy, the government does not have to show that the defendant actually possessed the weapon, but instead may establish that another member of the conspiracy possessed a firearm and that the co-conspirator's possession was reasonably foreseeable by other members of the conspiracy. *United States v. Sanchez,* 928 F.2d 1450, 1459 (6th Cir. 1991).

As discussed above, the evidence showed that Defendant was part of a conspiracy, and he actually possessed a gun during the course of the conspiracy. Several co-con-

spirators testified that they all, including Defendant, carried guns to protect their drug business. Defendant and other co-conspirators used the house at 138 East 8th to sell drugs. A search of that residence produced a .32–caliber derringer in an upstairs bedroom, and .357–caliber, .45–caliber, 9–mm, and shotgun ammunition. Gill also testified that he saw a gun on the refrigerator at 138 East 8th Avenue. Further, on one occasion, Defendant, Rouse, and other Gl Boys were all armed when they went to the house of an acquaintance of Rouse to recover some missing drugs. Defendant also operated a crack house at 993 Oakwood Avenue, carried a .38–caliber handgun at that house, and referred to the gun as his "trustee." Finally, in September or October of 1997, Defendant carried a black .38–caliber handgun when he threatened a confidential informant.

Based on all this evidence, we find the district court did not clearly err by enhancing Defendant's base offense level for possession of a firearm under U.S.S.G. § 2D1.1(b)(1).

### E. Amount of Drugs

Defendant finally contends that the district court erred in finding the amount of drugs attributable to him for sentencing purposes. Defendant argues that because there was no conspiracy, the relevant conduct should have been limited to the individual sales in September 1997, which were less than 15 grams of cocaine base. Alternatively, if there was a conspiracy, he argues that the evidence was insufficient to attribute more than 22 grams of cocaine base to him.

■ This Court reviews factual findings about the amount of drugs attributable to a defendant for clear error. *See United States v. Russell,* 76 F.3d 808, 812 (6th Cir.1996). In the absence of a drug seizure, or if the seized amount does not accurately reflect the scale of the offense, the district court may estimate the amount of the drugs by considering similar transactions. *United States v. Walton,* 908 F.2d 1289, 1301 (6th Cir.1990). A preponderance of the evidence must support an estimate. *Id.* at 1302. An approximation of drug quantity is not clearly erroneous if competent evidence in the record supports it. *United States v. Ward,* 68 F.3d 146, 149 (6th Cir.1995).

■ Here, the district court's findings in support of the drug quantity were not clearly erroneous. Gill sold crack cocaine to Defendant four to five times per month. The amounts of each sale varied from as much as one eighth of a "key" (kilogram) to one quarter or one half of an ounce. As the district court found, Gill's testimony supports the conclusion that his dealings with Defendant took place over the span of one year, from approximately June of 1996 until June of 1997. In addition, the district court stated at the sentencing hearing that "this level of sales from Mr. Gill to Mr. Evans is corroborated by a considerable body of testimony regarding the nature of Mr. Evans' activities during this period of time."

Relying on this evidence, and using conservative figures, the district court calculated four sales of one quarter ounce of crack per month over twelve months for a total of about 339.6 grams, this is well above the 50–150 range at which the district court sentenced Defendant. Because a preponderance of the evidence supports its finding, we find that the district court's determination was not clearly erroneous.

### III. CONCLUSION

Accordingly, we AFFIRM the judgment and sentence of the district court.