File Name:  08a0430n.06
Filed:  July 18, 2008

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 05-3671**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Dennis Evans, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| United States of America, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

Before:  GILMAN, ROGERS, McKEAGUE, Circuit Judges.

**ROGERS,** Circuit Judge.  Petitioner Dennis Evans appeals the district court's denial of his motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.  Evans argues that his trial attorney rendered constitutionally ineffective assistance of counsel by not pursuing a particular avenue of impeachment with a Government witness and by not requesting certain pre-trial statements of that witness.  Evans also seeks a remand to conduct discovery and an evidentiary hearing to determine whether such pre-trial statements exist and what impeachment material they may contain.  For the following reasons, we affirm the judgment of the district court and deny Evans's request for a remand.

## Background

In October 1997, petitioner Dennis Evans was indicted for, among other things, one count of conspiracy to distribute more than 50 grams of crack cocaine and four counts of distribution of crack cocaine. Later that month, Evans's trial counsel filed a request for discovery from the Government under Federal Rule of Criminal Procedure 16. Evans's attorney requested favorable *Brady* material, as well as "impeachment matters affecting the Government's case, including but not limited to the following:" the "statements [or] summaries of statements obtained by the Government or any law enforcement agency concerning the Defendant's lack of involvement concerning the commission of the alleged offense and/or statement[s] or summaries of statement[s] concerning suspects other than the Defendant in this matter," and "the written or recorded statements or summaries thereof of any witness relevant to these proceedings or, in the alternative, have available such statements for in camera inspection by the Court pursuant to Rule 26.2, Fed. Rules Crim. Procedure."

Shortly thereafter, the Government responded that although "Defendants are not entitled, prior to trial, to oral statements of co-defendants or co-conspirators," "[a]ny such statements or summaries existing in sufficient verbatim form to qualify for inclusion under 18 U.S.C. § 3500 [the Jencks Act] will be provided prior to cross examination of said witness." The Government also noted that "a defendant *is not* entitled to Jencks Act material during pre-trial discovery," explaining that the Jencks Act "provides that upon proper motion and order, the United States Attorney must

produce to the defendant, *after a witness called by the United States has testified in direct examination*, any statement of the witness in possession of the United States."

At trial, Lee Gill, the Government's lead witness and one of Evans's alleged co-conspirators, testified that he had sold crack to Evans roughly four to five times per month for approximately one year in amounts varying between 7 and 125 grams. During an earlier interview with a probation officer for his Presentence Report (PSR), however, Gill had made arguably inconsistent statements. In the interview, Gill had named various individuals to whom he had sold crack, but Evans's name was not on this list. Gill had also stated that he could not recall specific quantities sold.

Gill was cross-examined by both Evans's attorney and the defense attorneys representing Evans's co-defendants. Although Evans's attorney did not cross-examine Gill regarding the perceived inconsistency between his PSR statements and his in-court testimony regarding his sales of crack to Evans, some of the other defense attorneys noted this discrepancy as it affected their clients. For example, defendant Anthony Rouse's attorney pointed out during cross-examination that Rouse was not on the list of individuals that Gill had provided to his probation officer during his PSR interview, and also noted Gill's PSR statement that he could not recall the exact quantities he had sold to his customers.

During cross-examinations by multiple defense attorneys, Gill explained that, after he had begun providing the probation officer with names of individuals to whom he had sold crack, his attorney had advised him to stop and to refrain from discussing other customers:

> Q: When you talked with [the probation officer], did he ask you about some of the people that you sold either powder or crack cocaine to?
>
> A: Yes.
>
> Q: And you gave him a number of names; right?
>
> A: I started giving him a number of names until I was advised by my attorney not to discuss nothing further about that issue.

JA 321-22. Gill also claimed that his attorney had advised him, prior to his PSR interview, not to discuss specific quantities with the probation officer, and claimed that this advice is the reason he had told the probation officer that he could not recall specific quantities of crack sold. Gill admitted during cross-examination by Rouse's attorney that he had not told the probation officer the truth when he advised the officer that he could not recall specific quantities.

The defense attorneys also cross-examined Gill regarding statements he had made to various Government agents and attorneys before trial. Gill testified that he had been interviewed by Government agents and attorneys before trial and that it had appeared to him that the agents were taking notes of what he was telling them. Gill also testified, however, that he did not review any of those notes or reports allegedly prepared by the Government and that his statements had not been recorded.

On May 29, 1998, Evans was convicted of one count of conspiracy to distribute over 50 grams of crack cocaine and of three counts of distributing crack cocaine. The PSR attributed to Evans a total of 74.1 grams of crack cocaine. Of that total, 42.5 grams were attributed based on Gill's testimony; 21 grams based on the testimony of William Welch, a confidential informant; 3.5

grams based on the testimony of Andrew Byrd, a co-conspirator; and 7.1 grams based on the testimony of three undercover agents.

Evans's attorney objected to the calculation of 74.1 grams in the PSR, and in particular to the quantities attributed to Evans "based on unsubstantiated testimony of single witnesses such as Lee Gill, Andre Byrd and the [confidential informant]." At the sentencing hearing, Evans's attorney argued that Evans should be held accountable for no more than 28.1 grams: 21 grams purchased from Gill and 7.1 grams sold to undercover agents. Evans's attorney argued that a reasonable interpretation of Gill's testimony yielded a maximum of only 21 grams purchased from Gill:

> As I read Mr. Gill's testimony, he was clear that there was a limited relationship with Mr. Evans, and indicated four or five transactions over the course of a month or so, and those transactions were each relatively low levels, one eighth to one quarter of an ounce.
>
> The corroboration of that reading of Mr. Gill's testimony is actually found in Andre Byrd's testimony. Mr. Byrd testified that he heard Dennis Evans complain about the quality of the product that Mr. Gill had furnished, and Mr. Byrd heard Mr. Evans say he was not dealing with Lee Gill because the quality of the product wasn't right.
>
> . . . [W]hat Mr. Byrd did was testify to statements made by Mr. Evans which statements confirm that there were transactions with Mr. Gill, but also confirmed a lack of satisfaction with those transactions and, therefore, would be consistent with Mr. Gill's statement that we didn't do too much business together, maybe four or five transactions in a month.
>
> So we believe that the evidence supports a reading that there were four or five transactions between Mr. Gill and Mr. Evans, that those four or five transactions were an eighth, at the most a quarter, and if we use [the probation officer's] estimate of an eighth of an ounce, that would yield 17.5 grams of cocaine attributable to Mr. Evans' dealings with Mr. Gill.

> No, I believe that Mr. Evans' testimony actually is slightly higher than that, I believe his testimony is closer to 21 grams, and certainly that's sufficient evidence for the Court to find 21 grams of transactions.

JA 533-34. A total amount of 28.1 grams would have given Evans a base offense level of 28 under the federal Sentencing Guidelines.

The district court rejected Evans's interpretation of Gill's testimony:

> . . . I gather from Mr. Gill's testimony that he was supplying Mr. Evans from the summer of 1996 until the summer of 1997, and I believe a conservative estimate of a time frame would be June of '96 to June of '97. The quantity as described by Mr. Gill ranged from one eighth of [an ounce] to one-fourth ounce to one-half ounce, and the regularity was four to five times per month.
>
> Taking the most conservative of those variables, I would conclude that Mr. Gill was selling Mr. Evans a minimum of one fourth ounce of crack cocaine a minimum of four times a month.

JA 542. The district court concluded that Evans was responsible for "something in the range of 380 to 400 grams of crack cocaine," and explained that this level of sales from Gill to Evans was "corroborated by a considerable body of testimony regarding the nature of Mr. Evans' activity during this period of time," including the testimony of Andre Byrd. Moreover, Evans himself had admitted during his sentencing hearing that he had purchased crack from Gill in 1997:

> Q: Did you know Lee Gill in 1996 and 1997?
>
> A: Yes, I did.
>
> Q: Did you buy cocaine from Lee Gill between the months of May, 1996 and December of 1996?
>
> A: No, I didn't.

Q: Did you buy cocaine from Lee Gill between the months of January 1997 and June of 1997?

A: Yes.

Q: January of 1997 to June of 1997?

A: It would have been from June to about the middle of this summer.

Q: During the months of July or August of '97, did you buy cocaine from Lee Gill?

A: Yes, I did.

Q: How many times did you buy cocaine from Lee Gill in the months of July and August of 1997?

A: Twice.

Q: . . . How much cocaine did you buy on [the first] occasion?

A: The first occasion would have been an eight-ball of crack [3.5 grams], and the second occasion would have been 14 grams of powder.

JA 527-28.

Despite having concluded by a preponderance of the evidence that Evans was responsible for 380-400 grams of crack, the district court adopted the probation officer's more conservative calculations, "[g]iving Mr. Evans the benefit of the doubt," and ultimately found Evans responsible for 53.1 grams of crack, sustaining Evans's objection to the 21 grams based on Welch's testimony. The court sentenced Evans to 262 months' imprisonment using an offense level of 34 and a criminal history category of VI. Evans's offense level was determined using a base offense level of 32 for being responsible for 50 to 150 grams of crack cocaine plus a two-level enhancement for possession of a firearm while selling crack. Evans's conviction was affirmed by this court in July 2001, *United*

*States v. Evans*, 15 F. App'x 330 (6th Cir. 2001), and the Supreme Court denied certiorari in December, 2002.

In May 2003, Evans prepared a motion styled "Motion Pursuant To Rule (6) A.B of Section 2255 Proceedin[g]s," requesting an evidentiary hearing and leave to conduct discovery in preparation for his habeas petition under 28 U.S.C. § 2255. His motion sought production of Government documents relating to Lee Gill's trial testimony in order to support his potential claim that his trial counsel "was ineffective for not having the Court compel the Government to produce" Gill's pre-trial statements. For reasons that are not clear from the record, Evans's motion was never docketed,[1] and the district court therefore did not rule on it. Although the motion was never docketed, Evans did refer to it in his subsequent § 2255 petition.

On December 10, 2003, Evans filed a *pro se* § 2255 petition, styled as a "motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255." This original petition presented four issues relating to the performance of Evans's trial attorney, only the fourth of which, entitled "ineffective assistance of counsel at sentencing," is relevant to this appeal. In the petition, Evans alleged that his trial attorney "failed to object to the court sentencing petitioner based on false, misleading and inaccurate information during the sentencing hearing for relevant conduct. The government relied on Lee Gill's trial testimony and the amount alleged in petitioner's [PSR]."

---

[1]Evans claims in his appellate brief that he filed the motion with the district court on May 19, 2003, but that it "does not appear to have been properly docketed." The Government acknowledges that such a motion was "prepared," but claims that Evans's motion "was never filed with the district court." The motion is not in the Joint Appendix.

On January 26, 2004, Evans prepared and served on the United States Attorney a motion to amend his original petition to add four additional grounds of ineffective assistance. This petition was not docketed until August 16, 2004. Only the third amended ground is relevant to this appeal: Evans alleged "[i]neffective assistance of counsel, Post-trial," arguing that his trial attorney "unprofessionally failed to file a motion to dismiss charges when the government failed to produce the 302 reports relating to Lee Gill pursuant to 18 U.S.C. § 3500." A 302 report is an FBI investigation form containing interview notes made by the interviewing agent. *See United States v. Nathan*, 816 F.2d 230, 236-37 (6th Cir. 1987); *United States v. Minsky*, 963 F.2d 870, 872 (6th Cir. 1992).

In February 2004, the Government responded to Evans's motion to supplement. Evans filed a "Traverse Motion to Government Response" on May 3, 2004, at the end of which he requested an evidentiary hearing regarding his petition. This request for an evidentiary hearing was never expressly ruled on by either the magistrate judge or the district judge.

On December 28, 2004, the magistrate judge issued a Report and Recommendation, recommending that Evans's supplemental petition should be denied because it was not timely filed and that Evans's initial four claims in his original petition should be denied on the merits. Regarding Evans's claim in his original petition that his trial attorney was ineffective for failing to object at sentencing to reliance on Gill's testimony, the magistrate judge concluded that Evans's attorney had rendered effective assistance because he did object to the court's determination that more than 50 grams of crack was attributable to Evans.

The district court adopted the magistrate judge's recommendations in April 2005, denied Evans's petitions, and dismissed his case. This court granted his application for a general certificate of appealability, without identifying any issue in particular.

On appeal, Evans seeks to have his sentence vacated and his case remanded for resentencing. He argues that his Sixth Amendment right to effective assistance of counsel was violated because he was prejudiced by his trial attorney's deficient performance. In particular, he argues that his attorney unreasonably failed to cross-examine Gill regarding the inconsistency between Gill's trial testimony and PSR statements; failed to note Gill's inconsistent PSR statements at sentencing; and failed to "obtain other key prior interviews" of Gill, including production of the FBI's 302 report on Gill. Evans claims that he was prejudiced by these alleged deficiencies in his attorney's performance because there is a reasonable probability that he would have received a lower sentence if his trial attorney had properly drawn Gill's testimony into doubt. Without the 42.5 grams of crack cocaine attributed to him on the basis of Gill's testimony, the total amount of crack attributable to Evans would have been below 50 grams and would have resulted in a base offense level of 26 versus the base offense level of 32 that he actually received. Evans also argues that his case should be remanded for discovery and an evidentiary hearing because, if the district court had allowed discovery in his § 2255 proceeding, Evans could have determined whether his trial attorney had ever sought to obtain—and obtained—all of Gill's prior statements relating to his trial testimony, and in particular the FBI's 302 report on Gill, which statements Evans claims might have contained impeachment material.

**I**

Evans's right to effective representation was not violated by his attorney's cross-examination or sentencing-hearing performance. The fact that Evans's attorney did not cross-examine Gill regarding his arguably inconsistent PSR statements does not render the attorney's performance deficient, nor does the fact that the attorney did not note Gill's inconsistency during Evans's sentencing hearing. Moreover, even if Evans's attorney performed deficiently in this regard, Evans was not prejudiced. His ineffective-assistance claim on these grounds therefore fails.

Given the trial context, the decision not to focus on the apparent inconsistency between Gill's trial testimony and PSR statements was objectively reasonable. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (holding that the standard of attorney performance is that of "reasonably effective assistance" measured against "an objective standard of reasonableness" and "under prevailing professional norms"). Because other testimony reconciled Gill's allegedly inconsistent PSR statements and indicated that Evans had purchased crack from Gill, an attempt by Evans's attorney to discredit Gill's trial testimony using Gill's PSR statements may well have been a losing battle. For example, the district court noted at sentencing the trial testimony of Andre Byrd, who had corroborated Gill's trial testimony that Evans had purchased crack from Gill: "I did review the testimony of Mr. Byrd, Andre Byrd, and it again is corroboration of the length of time that Mr. Evans was purchasing from Mr. Gill, and it confirms that he was continuing to purchase in the summer of 1997. Apparently that's when he became dissatisfied with the business relationship with Mr. Gill." Evans's own admission at sentencing that he had purchased from Gill on two occasions also

corroborated that he had indeed purchased crack from Gill. Moreover, Gill had extensively explained the apparent inconsistency between his PSR statements and his trial testimony during cross-examination by other defense attorneys.[2] As a result, the impeachment value with respect to Evans of Gill's PSR statements was trivial and, for whatever impeachment value the statements retained, the district judge was well aware of the statements and how they conflicted with Gill's trial testimony. Given this context, it would be reasonable for Evans's attorney to choose not to emphasize the apparent inconsistencies between Gill's PSR statements and trial testimony.

Indeed, it appears from the record that this was likely a deliberate strategy decision by Evans's attorney. During his cross-examination of Gill, Evans's attorney questioned Gill regarding how he had become involved with the individuals with whom he sold drugs:

> [EVANS'S ATTORNEY]: Do you recall making the statement that you did not recruit people to sell drugs, but they were people that you had grown up and knew from Gary, Indiana?
>
> [GILL]: Correct.
>
> Q: That's a true statement, isn't it?
>
> A: Yes, it is.
>
> Q: You did not recruit anybody into a conspiracy, did you?
>
> A: Correct.

---

[2]As the Government noted, although Evans's attorney was the first to cross-examine Gill at trial, it is not uncommon for defense attorneys to divide issues to cover on cross-examination in criminal trials involving multiple defendants. The defense attorneys may have done so here.

JA 297. As the Government suggested in its appellate brief, this pattern of questioning indicates an intention to dismantle the Government's conspiracy theory. Given other evidence indicating that Evans was involved in purchasing crack, and from Gill in particular, and the fact that the conspiracy charge potentially posed the most severe sentence for Evans, targeting the conspiracy charge rather than Gill's credibility regarding whether or not Evans had ever purchased crack from him would be a reasonable strategic choice.

The attorney's performance during Evans's sentencing hearing also indicates that he had made a strategic decision not to discredit Gill using his PSR statements. Rather than attempting wholly to discredit Gill, Evans's attorney sought to persuade the court to adopt an alternative interpretation of Gill's testimony that would lead to the conclusion that Evans had only purchased 21 grams of crack from Gill, rather than the 380 to 400 grams that the district court ultimately extrapolated. Evans's attorney attempted to bolster this interpretation of Gill's testimony by questioning Evans about specific dates and quantities of crack relating to his dealings with Gill. During this questioning, Evans admitted that he had, in fact, purchased crack cocaine from Gill, thereby destroying the impeachment value of Gill's PSR statement derived from the fact that Evans was not on the list of names that Gill had provided to his probation officer. In sum, Evans's attorney had a plan and that plan was objectively reasonable under the circumstances.

Even if his attorney's performance were deficient in this regard, Evans was not prejudiced. To prevail on an ineffective-assistance claim, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *See Strickland*, 466 U.S. at 694. As explained above, the district judge was well aware from cross-examination by the other defense attorneys of the tension between Gill's PSR statements and trial testimony, and Gill's explanations on cross-examination arguably robbed his PSR statements of much of their impeachment value. There is simply not a reasonable probability that Evans's sentence would have been different if his attorney had echoed Gill's inconsistencies to the district court. *Ross v. United States*, 339 F.3d 483, 495 (6th Cir. 2003) ("When the [factfinder] hears on direct examination the evidence a petitioner feels counsel should have developed in cross-examination, the petitioner did not suffer prejudice.").

## II

Evans's right to effective representation also was not violated by his attorney's handling of requests for discovery and witness statements from the Government.[3] As an initial matter, Evans's attorney made an extensive request for pre-trial discovery, and no reason appears in the record to doubt that the Government properly complied. It also appears from the record that the defense attorneys were in fact supplied with *Brady* and *Giglio* material, as well as other witness statements.

Although Evans argues that he was entitled, pursuant to 18 U.S.C. § 3500 (Jencks Act), to review all of Gill's statements made to the Government relating to Gill's trial testimony and that there is "no record that [his] trial counsel ever sought production of" these statements, notably the FBI's 302 report for Gill, there is no indication in the record that any undisclosed § 3500 statements

---

[3]Because this claim fails on the merits, it is unnecessary to decide whether it is time-barred.

existed, and Evans has not pointed this court to any such indication. This court has held that "an FBI

report of a witness' statement is producible if the notes from the interview were read back to and

verified by the witness and if the report summarized the notes without material variation." *United*

*States v. Nathan*, 816 F.2d 230, 236-37 (6th Cir. 1987) (citing *United States v. Chitwood*, 457 F.2d

676, 678 (6th Cir.), *cert. denied*, 409 U.S. 858 (1972)). As explained above, although Gill testified

that the Government agents who interviewed him had taken notes during their interviews, he also

testified that he did not review any of those notes or reports prepared by the Government regarding

his statements and that his statements had not been recorded. Based on this testimony, there was no

reason to believe that withheld Jencks Act material existed, and it was therefore reasonable for

Evans's attorney not to request this apparently nonexistent material.[4]

To the extent Evans argues that his attorney should have requested the court to perform

analyses of Government documents for Jencks Act material, a defendant must first establish some

basis for believing that the document exists and that it may contain such material. *See, e.g.*, *United*

*States v. Roseboro*, 87 F.3d 642, 645-46 (4th Cir. 1996) (explaining that, to invoke the court's duty

to examine the Government's documents for Jencks Act material, a defendant must "provide some

---

[4]We assume for purposes of this appeal that Evans's attorney did not request Jencks Act material. We note, however, that in its response to a pre-trial discovery request by Evans's attorney, the Government stated that while "Defendants are not entitled, prior to trial, to oral statements of co-defendants or co-conspirators . . . [a]ny such statements or summaries existing in sufficient verbatim form to qualify for inclusion under 18 U.S.C. § 3500 [the Jencks Act] *will be provided prior to cross examination of said witness*." (Emphasis added). It is therefore possible that the Government provided defense counsel any existing Jencks Act material automatically, without waiting for defense requests.

indication that the witness gave a pretrial statement to a government agent generally related to the witness' direct testimony. The defendant's showing need not be great, but it must be more than a mere automatic demand for government witness' statements"). Here, Evans appears merely to be speculating about the existence of § 3500 statements by Gill and their potential content. In the absence of any basis for believing that such statements existed, were improperly withheld, or had relevant content, it was reasonable for his attorney not to request the court's inspection of the Government's documents, and there is no reason to think that Evans was prejudiced by his attorney's actions in this regard.

## III

We also decline to remand Evans's case for discovery or an evidentiary hearing. Although a § 2255 petitioner's burden is relatively low in seeking an evidentiary hearing, the court need not conduct one if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because it was not deficient for Evans's attorney not to seek production of Gill's statements, FBI 302 report or otherwise, there is no need to conduct discovery into the documents' existence or content for the purpose of his ineffective-assistance claims. *See Strickland*, 466 U.S. at 687 (requiring both deficient attorney performance and resulting prejudice to the defendant to succeed on a claim of ineffective assistance of counsel).[5]

---

[5]To the extent that Evans desires the supposed documents to prove his speculation that the Government may have illegally withheld material, this is not one of his claims.

Insofar as Evans seeks discovery to determine whether his trial attorney gave him incorrect advice regarding what sentence he would receive through a plea agreement versus trial, this claim is time-barred. Evans raised the claim for the first time in his supplemental petition, which petition he filed more than one year after his conviction became final, and the claim differs significantly from those he raised in his original timely petition and therefore does not "relate back" to his timely petition. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").

## Conclusion

For the foregoing reasons, we affirm the district court's denial of Evans's petition to vacate, set aside, or correct his sentence, and we deny Evans's request for a remand.