RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
————————————

TRACY LYNN COWAN,
        *Petitioner-Appellant,*

        *v.*

No. 08-2338

CLARICE STOVALL, Warden,
        *Respondent-Appellee.*

————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13846—Robert H. Cleland, District Judge.

Argued: December 1, 2010

Decided and Filed: July 19, 2011

Before: BATCHELDER, Chief Judge; ROGERS and KETHLEDGE, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Evan B. Stephenson, WHEELER TRIGG O'DONNELL LLP, Denver, Colorado, for Appellant. Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Evan B. Stephenson, WHEELER TRIGG O'DONNELL LLP, Denver, Colorado, for Appellant. Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

        KETHLEDGE, J., delivered the opinion of the court, in which ROGERS, J., joined. BATCHELDER, C. J. (pp. 9–10), delivered a separate dissenting opinion.

————————————

## OPINION
————————————

        KETHLEDGE, Circuit Judge. Tracy Cowan was charged with various drug offenses in Michigan state court based on her presence in a house where the drugs were found. Cowan did not own the house, and her defense was that she did not know the

1

drugs were there. But her lawyer at the time—who was high on cocaine for much of the time he represented her—never interviewed any of the other people in the house or called them as witnesses at trial. Cowan was eventually convicted of all the charges. Years later, she filed a *pro se* habeas petition in which she presented numerous claims. One of them was that her trial lawyer was ineffective as a result of his failure to interview the other people in the house. The district court held that Cowan had not timely presented this claim, and thus did not consider it. We respectfully disagree with the court as to whether Cowan timely presented her failure-to-interview claim, and to that extent we remand the case; but we otherwise affirm.

I.

On September 26, 2002, the City of Farmington Hills Police Department conducted a controlled buy of cocaine using a confidential informant. A dealer named Tamir Bell took the informant to several locations during the buy, including a house on Appoline Street in Detroit. Later that night, the police raided the house. Inside there were six people: Cowan; her adult daughter, Crystal Cowan; her teenage daughter, Rachel Carter; her teenage son, Richard Carter; her infant grandson; and Pappilon Tucker, the teenage son of her ex-boyfriend, Rory Jones, who was himself an alleged drug dealer. In a locked closet in the master bedroom, the police found 714 grams of cocaine, a pound of marijuana, and two loaded firearms. In a locked pantry in the basement, they found 800 grams of cocaine, scales, presses, and other dealer paraphernalia. Although Cowan did not own the house and said she was only staying there for the night, prosecutors later charged her with possession of the drugs and guns that were found there. She had no criminal record at the time.

David Perlman took over as Cowan's defense attorney four months before her trial. He regularly used cocaine during the time he represented her, for which the Michigan Attorney Grievance Commission later suspended his law license.

At trial, Perlman's defense theory was that Cowan had not been present in the house during the controlled buy and knew nothing about the drugs there. Instead, Perlman argued, Cowan had gone to the house that night to visit her children and then

had fallen asleep. Although Perlman knew that Cowan's children had been in the house that night, and thus that they potentially could have corroborated her story, he never interviewed them or called them as witnesses at trial. Instead, as his sole witness, Perlman called a personal investigator who testified primarily about the house's layout and how the drugs were hidden in the basement.

The jury convicted Cowan on all counts. She was sentenced to a minimum of 20 years for possessing the cocaine, 2 years for possessing the firearms, and 6 months for possessing the marijuana, all to be served consecutively. She reported to prison in 2003.

Cowan filed a direct appeal with the help of a new lawyer. She challenged her conviction on several grounds, including that her trial counsel was constitutionally ineffective. The Michigan Court of Appeals rejected her arguments. *People v. Cowan*, No. 250838, 2005 WL 119811 (Mich. Ct. App. Jan. 20, 2005). She sought leave to appeal from the Michigan Supreme Court, which denied her request. *People v. Cowan*, 702 N.W.2d 579 (Mich. 2005) (table).

Cowan thereafter filed a *pro se* habeas petition in federal court. She asserted numerous claims, including that Perlman was ineffective for failing to interview "willing and available" witnesses who "would have supported Petitioner's defense that she was not present during the [drug] transaction." Cowan later filed a motion to amend her petition, in which she spelled out in greater detail the witnesses whom Perlman had ignored and the substance of what their testimony would have been. The district court denied the motion. Cowan also moved for an evidentiary hearing, which the district court denied. The court then denied her petition. Cowan moved for reconsideration, attaching sworn affidavits from the uncalled witnesses to the effect that Cowan had known nothing about the drugs. The district court denied that motion as well.

The district court denied Cowan permission to appeal. She asked this court for a certificate of appealability, which we granted only with respect to her ineffective-assistance claim.

II.

We review de novo the district court's denial of habeas relief. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

A.

Cowan argues, among many other things, that we should remand her case with instructions to grant the writ based upon Perlman's failure to interview the other people in the house where the drugs were found.  The district court did not reach the merits of this claim because it thought the claim was not timely presented.  We consider that issue first.

The habeas statute imposes a one-year limitations period on habeas applications by state prisoners.  *See* 28 U.S.C. § 2244(d).  But Fed. R. Civ. P. 15(c)(1) as applied in habeas cases creates an exception to that rule:  when a prisoner files an original petition within the one-year deadline, and later presents new claims in an amended petition filed after the deadline passes, the new claims relate back to the date of the original petition if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Here, Cowan filed her original petition within the one-year limitations period. According to the district court, however, Cowan's original petition did not include an ineffective-assistance claim based on Perlman's failure to interview the other people in the house.  Later, after the one-year limitations period had passed, Cowan moved to file an amended petition that clearly did include a failure-to-interview claim.  But the district court thought that claim was based on facts that  "differ[ed] in both time and type" from the facts set forth in her original petition.  Thus the claim would not relate back to the date of the original petition, which in turn meant the claim would be untimely.  The district court therefore denied leave to file the claim.

Thus, the linchpin of the district court's refusal to consider Cowan's failure-to-interview claim was that it did not share a common core of operative facts with Cowan's

original petition. That is the question we focus on now. In her original petition, Cowan alleged as part of her ineffective-assistance claim:

> *Defense counsel failed to investigate the case and if counsel had investigated the case, he would have found the testimony of witnesses [that] would have helped Petitioner's case substantially. The witnesses were willing and available.* Because counsel does not know what an investigation will reveal is no reason not to conduct the investigation. Counsel's failure [to investigate thoroughly] was not sound trial strategy. *Interview of witnesses would have supported Petitioner's defense that she was not present during the [drug] transaction.* Lack of investigation restricts counsel's ability to make reasonable professional judgments, and deprived Petitioner of a substantial defense, and the effectiveness of assistance of counsel.

Petition at 10 (emphasis added). Cowan also attached a "memorandum" to her petition in which she argued that Perlman had failed to interview "alibi witnesses."

In her motion to amend, Cowan described the witnesses whom Perlman could have interviewed, and how they could have shown that she had been away from the house all day and had arrived there only after the controlled buy was over. She concluded by stating that she had "provided her trial attorney with a list of witnesses who could verify her whereabouts and thus defense theory, as explained above. Counsel failed to interview any of the witness[es] and did not raise the alibi defense," which she said was "partially predicated on the theory that while Ms. Cowan was away from the house, her former boyfriend [Rory Jones] brought the narcotics to the house and stashed it."

Cowan expressly asserted in both documents, therefore, that Perlman should have interviewed witnesses who could have testified to her whereabouts on the date of the controlled buy. The motion to amend merely added more detail with respect to who the witnesses were and what they would say. The facts recited in the two documents differed not in kind, but in specificity. In that respect her case is similar to *Mandacina v. United States*, 328 F.3d 995 (8th Cir. 2003), which the Supreme Court in *Mayle* expressly cited as a case where relation-back was proper. As the Supreme Court explained it, in *Mandacina* "the original petition alleged violations of *Brady v.*

*Maryland*, while the amended petition alleged the Government's failure to disclose a particular report." *Mayle*, 545 U.S. at 664 n.7 (citation omitted). This case is similar: Cowan's initial petition alleged that Perlman failed to interview witnesses who could have supported her defense theory, while her amended petition set forth certain particulars of that claim. Thus, even if one assumes that her original petition did not state a failure-to-interview claim—and we have our doubts about that assumption—her failure-to-interview claim as set forth in her motion to amend did share a common core of operative facts with her original petition. And that means the claim would have related back to the date of the original petition, which means it would have been timely. *See Mayle*, 545 U.S. at 664.

That said, we hardly fault the district court for failing to match up the factual bases of Cowan's amended claim and those of her original petition. The court had the unenviable task of sifting through a formidable mass of *pro se* allegations, most of which were meritless. But ultimately the basis on which the district court denied Cowan's motion was incorrect; and, as shown below, we otherwise think that Cowan's failure-to-interview claim is anything but frivolous. Her motion to amend should have been granted.

It does not follow, however, that we can grant Cowan the relief she now seeks. As the Warden correctly points out, Cowan has not presented her failure-to-interview claim to the Michigan state courts. (She did present some other theories of ineffective assistance there, but not a failure-to-interview one. *See generally Caver v. Straub*, 349 F.3d 340, 346-47 (6th Cir. 2003).) Cowan can still present this claim in the Michigan courts by filing a motion for relief from judgment. *See* M.C.R. 6.502. Thus, the claim is unexhausted and we cannot grant relief on it. *See Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009). Cowan must present this claim to the state courts before she can obtain any relief on it in the federal courts.

In the meantime we must decide what to do with this claim. If the claim were plainly meritless, we could reject it now. *Id.* But it is not plainly meritless. Cowan's claim is that her lawyer was ineffective as a result of his failure to interview at least four

other witnesses who were in the Appoline house on the date of the controlled buy and raid. That omission itself amounted to patently deficient performance on her lawyer's part. And we think it only common sense that the prejudice that flowed from that omission comprises all of the testimony that the record suggests those witnesses would have offered. The record is not fully developed before us, in part because the claim is unexhausted. But the record does include sworn affidavits from four witnesses whom Perlman should have interviewed. Those affidavits suggest that at least two witnesses—one of whom was Rory Jones's son—would have testified that Cowan had been absent not only during the controlled buy, but also when Jones allegedly stashed the drugs in the house that same day. *See* Tucker Aff. ¶ 6; Richard Carter Aff. ¶ 5. The latter affidavit also says that Cowan became upset with Jones on one occasion when he left drugs in the house. *Id.* ¶ 7. Further development of the claim may yield additional relevant testimony. None of this is to say, of course, that Cowan's claim is actually meritorious; that issue is for the state courts to decide, at least in the first instance. But it is to say that we should not dismiss the claim out of hand as frivolous. Even the Warden conceded at oral argument before us that we should remand the claim, rather than dismiss it outright, if we held that it was timely presented and unexhausted—and now we have so held.

So two options remain: first, dismiss the claim without prejudice while Cowan pursues it in state court, in which case the claim might be time-barred if she later returns with it to federal court, *see* 28 U.S.C. § 2244(d); or second, stay her petition (which now comprises only this claim) and hold it in abeyance while she returns to state court. *See Wagner*, 581 F.3d at 419. Under that approach Cowan could return later to federal court for a ruling on the merits of this claim if the state courts deny relief on it.

Given the nature of the claim here, it is hard to disagree with the road map laid out in *Wagner*: if "Petitioner can show good cause for failing to present th[is] claim[] to the state court in the first instance, we see no reason why the district court should not grant a 'stay and abeyance' while Petitioner exhausts in state court[.]" *Id.* (quoting

*Rhines v. Weber*, 544 U.S. 269, 277 (2005)). In any event, we remand the claim so that the district court can decide in the first instance what to do with it.

B.

Cowan also asks us to grant the writ on yet another theory of ineffective assistance, namely, that Perlman failed to discover other exculpatory evidence that came to light during the trial of Tamir Bell. *See People v. Bell*, No. 282222, 2009 WL 1027462 (Mich. Ct. App. Apr. 16, 2009). Cowan says she first learned of the *Bell* evidence, as she calls it, while this appeal was pending. But the fact remains that Cowan has never presented this claim to the state courts, or even the district court. So we cannot grant relief on it.

Alternatively, Cowan asks for permission to file a second or successive petition to present this claim in the district court. For us to grant her request, she must show that her new evidence, considered together with the evidence presented at her trial, "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [her] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). Cowan says the *Bell* evidence exonerates her because it shows that her ex-boyfriend, Rory Jones, controlled the drugs that were found in the house on Appoline Street. But the State contended in both her trial and Bell's that Cowan and Jones acted in concert. The *Bell* evidence does not refute that theory. Nor does it affirmatively show that Cowan was unaware that the drugs were in the house. After carefully reviewing the record, therefore, we conclude that the *Bell* evidence does not establish by a clear and convincing margin that no reasonable jury could find Cowan guilty. We therefore do not grant her permission to file a second petition to present this claim.

\*    \*    \*

The district court's judgment is affirmed in part and reversed in part, and the case remanded for further proceedings consistent with this opinion.

---

**DISSENT**

---

ALICE M. BATCHELDER, Chief Judge, dissenting.  The majority asserts that Cowan's trial counsel "should have interviewed witnesses who could have testified to her whereabouts at the time of the controlled buy,"[1] and holds that her "failure-to-interview claim is anything but frivolous."  I must respectfully disagree.  Her claim is frivolous.

The prosecutor charged Cowan with four counts:  possession with intent to deliver more than 650 grams of cocaine, possession with intent to deliver marijuana, and two counts of felony firearm possession.  The case was tried to a jury and the prosecutor's theory was that, while Cowan herself may not have been an active "drug dealer," the Appoline house was a "stash house" for another drug dealer and Cowan was a participant inasmuch as she had possession of (dominion and control over) the contraband — it was in her house, she knew it was there, and she acquiesced.  The prosecutor played the video of her interview for the jury, in which she stated that she had dominion and control over the house, the locked rooms, and everything therein.  Officers testified to finding Cowan's belongings and mail in the house, further demonstrating that it was her house.  Officers also testified about the appearance and location of the contraband, which demonstrated that she must have known what it was, that it was there in her house, and that it was being packaged for distribution.  The prosecutor established that Cowan lived in the house at least sometimes (e.g., on the night of the raid), but had not notified the police or taken any measures to remove or destroy the contraband.

The fact that she was not present at the time of the controlled buy is not relevant to her conviction.  The prosecutor announced this prior to trial, during a preliminary hearing, stating:  "But we don't have to prove that she specifically handed cocaine to an individual on a specific instance in order for her to be found to . . . ."  Whereupon the

---

[1]Cowan states this claim in her habeas petition as: "Interview of witnesses would have supported Petitioner's defense that she was not present during the [d]rug transaction."

trial court interrupted: "I'm satisfied she has dominion and control over the house to the exclusion of Rory whatever his name is, because there's no demonstration he had any right to the property except as a guest." And, at trial, the prosecutor was very clear in her closing argument:

> You are also going to hear that anybody who helps another in possessing with the intent to distribute is just as guilty as the person who distributes it. So the defense may say we — you don't have any evidence that this defendant delivered narcotics, and you know what? We don't have any evidence that this defendant delivered narcotics, but this defendant is not charged with delivering narcotics. This defendant is charged with the intent to distribute or knowing somebody else is going to distribute the narcotics.

> Let's talk about why you know that this defendant knew that those drugs were in her house, that she had absolute right and control over the entire house[.]

Suppose defense counsel had produced witnesses — very persuasive witnesses — to testify that Cowan was not present during the controlled buy. That would not have changed the outcome of her trial, inasmuch as that was not an aspect of the crime for which she was charged. Consequently, her claim is frivolous and there is simply no basis for the majority's stay and abeyance.

I must respectfully dissent.