RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GARY WATKINS,

*Petitioner-Appellee,*

No. 15-2445

*v.*

JODI DEANGELO-KIPP, Warden,

*Respondent-Appellant.*

───────────────

Appeal from the United States District Court for
the Eastern District of Michigan at Detroit.
No. 2:10-cv-13199—Arthur J. Tarnow, District Judge.

Argued: October 20, 2016

Decided and Filed: January 10, 2017[*]

Before: CLAY, KETHLEDGE, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Linus Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Phillip D. Comorski, Detroit, Michigan, for Appellee. **ON BRIEF:** Elizabeth Rivard, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Phillip D. Comorski, Detroit, Michigan, James C. Thomas, JAMES C. THOMAS P.C., Sterling Heights, Michigan, for Appellee.

───────────────

[*]This decision was originally released as an unpublished opinion filed on January 10, 2017. The court has now designated the opinion as one recommended for full-text publication.

———————

**OPINION**

———————

BERNICE BOUIE DONALD, Circuit Judge.  Prior to a jury trial for charges arising from the murder of Quincy Varner, Gary Watkins submitted four times to psychiatric evaluation. Though the first evaluator found him incompetent, subsequent evaluators found him competent and criminally responsible for his actions.  Despite his bizarre behavior during trial, including exhibiting paranoid beliefs and urinating on a television screen, defense counsel did not request a fifth psychiatric evaluation.  A jury found Watkins guilty as charged.  Nearly four years after filing a timely habeas petition alleging ineffective assistance of counsel for "failure to investigate and raise a defense," Watkins filed an amended petition arguing ineffective assistance of counsel for failure to request another psychiatric evaluation after Watkins' conduct during trial.  The district court granted Watkins' request for habeas relief.  However, because Watkins cannot establish that his amended petition relates back to his original petition or that he is entitled to equitable tolling, we **REVERSE** the district court and **DISMISS** this portion of his petition as untimely.  Because we conclude that the petition is untimely, we decline to address the merits of Watkins' ineffective assistance of counsel claim.

I.

A jury convicted Watkins of second degree murder, two counts of felony-firearm possession, and assault with intent to murder.  Prior to trial, defense counsel requested that Watkins be evaluated for competence to stand trial and for criminal responsibility.  Watkins was first evaluated on March 27, 2006 and was deemed incompetent to stand trial. During the interview, Watkins refused to respond, verbally or otherwise, to the evaluator's questions, so the evaluator "was unable to formally assess his emotional, cognitive, or intellectual function," and had to rely on "collateral information."  March 27, 2006 Evaluation 3, 5, ECF. No. 15-23, Page ID 885, 887.  Specifically, the evaluator reviewed prison and hospital reports, which revealed that: Watkins did not display behavioral problems until March 3, 2006 when he became hostile with staff members who refused to give him pain medication, complained of weakness on the left side of his body, and cried in his cell.  He was then transported to the hospital, the reports said,

where it was determined that his actions appeared voluntary and were not the result of an organic disorder. Several days later, the reports stated, Watkins was involuntarily hospitalized because he began urinating on himself, stopped responding to staff, stopped eating, and became combative with staff. He also began to say "bizarre" things, like claiming to be Jesus Christ, and claiming his father was a demon who framed him for murder. *Id.* at 4, Page ID 886. Based on the reports, the evaluator deemed Watkins incompetent to stand trial "at this time," but postulated that there was a "substantial probability" that Watkins could regain competency "if provided a structured, inpatient, hospital setting with provision for appropriate therapeutic intervention." *Id.* at 5, Page ID 887.

After several weeks of the suggested inpatient treatment, Watkins was deemed competent to stand trial. During treatment, Watkins "indicated that he was unable to speak or hear, but his behavior did not appear consistent with this." April 13, 2006 Evaluation 2, ECF No. 15-22, Page ID 840. For example, Watkins pleasantly interacted with other patients, the patients told staff that Watkins spoke to them, and staff members, including the evaluator, observed Watkins speaking. Though at times Watkins was combative with staff, he eventually started speaking with them, and appeared "goal directed, logical and coherent" without signs of "disorientation or confusion." *Id.* The results of the psychological testing indicated "exaggeration and possible malingering of psychopathology." *Id.* The evaluator determined that Watkins was "capable of working with his attorney in his defense" if he so chose. *Id.* at 3, 841. Based on these evaluations, the court found Watkins competent to stand trial.

At defense counsel's request, the court ordered a third evaluation. This evaluator found that Watkins was criminally responsible for his actions. The evaluator noted that Watkins was uncooperative and unresponsive, combative with staff "in a seemingly unpredictable manner," and made allegations that the staff was trying to murder him. July 17, 2006 Evaluation 2, ECF No. 17-1, Page ID 1151. The evaluator's determination of criminal responsibility was based on observation of Watkins' behavior; Watkins' previous hospitalizations and evaluations; an interview with Watkins' mother indicating Watkins' increased paranoia in recent years; an interview with Watkins' probation officer, who spoke to Watkins in December 2005 and indicated that Watkins was able to engage in a "logical and relevant manner"; and an interview

with a detective who interviewed Watkins in January 2006 and indicated that Watkins was calm and spoke clearly with a lot of detail. *Id.* at 4–6, Page ID 1153–55.

Defense counsel then moved for a fourth psychiatric evaluation, which the court granted. The evaluator's report is not in the record, but defense counsel stated that the evaluator found insufficient evidence to make a finding of a lack of criminal responsibility.

The case proceeded to trial, during which Watkins made various bizarre outbursts. The first morning of trial, the State expressed concerns that Watkins' behavior posed a threat of injury or escape. A county sheriff testified that Watkins had been combative with officers and had thrown feces and urine at them. Watkins interjected: "I ain't got no time for your games. This ain't no real court. Get me back to the real world. I'm going back to my wife and I'm eating dinner." Trial Tr. Vol. 1 10:10–13, Jan. 8, 2007, ECF No. 15-9, Page ID 406. He later spit on the table. During jury selection, Watkins exclaimed, "Guilty" several times. *Id.* at 34:25, 40:17, Page ID 412, 414. When the court warned him about interjecting during jury selection, Watkins flipped over the counsel table, and was removed to watch and listen to the proceedings on a closed circuit television. While outside of the courtroom, Watkins spit on an officer and urinated on the television. On the next day of trial, against counsel's advice, Watkins took the stand to testify, pronouncing, "I want Jesus to be my judge." Trial Tr. Vol. 2 75:21, Jan. 9, 2007, ECF No. 15-10, Page ID 545. He was convicted as charged.

On July 28, 2010, Watkins filed a *pro se* motion for equitable tolling, which the district court denied as moot because the filing was, in fact, timely. So, the court construed the filing as a petition for writ of habeas corpus because Watkins listed the claims he wished to raise in his habeas petition. *Watkins v. Haas*, 143 F. Supp. 3d 632, 637–38 & n.4 (E.D. Mich. 2015). On July 23, 2014, he then filed an amended habeas petition, which the district court granted. *Id.* at 634. Without any analysis or explanation of the facts presented in the original petition, the district court concluded that under *Mayle v. Felix*, 545 U.S. 644 (2005), Watkins' supplemental habeas petition related back to the original petition because the two petitions shared a "common core of facts." *Watkins*, 143 F. Supp. 3d at 640. With equally scant analysis, the court further concluded that, regardless, Watkins would be entitled to equitable tolling of the statute of limitations because his mental disability prevented his timely filing. *Id.*

Then, turning to the merits of the ineffective assistance of counsel claim, the district court held that:

> [i]n light of petitioner's extensive history of mental and psychiatric problems, his continued bizarre behavior and delusional or paranoid statements, his non-responsive answers to some of the judge's or counsel's comments, and his utter inability to cooperate with counsel or follow his advice, counsel was clearly ineffective in failing to request an additional competency evaluation.

*Id.* at 643. Without addressing whether Watkins established the requisite element of prejudice, the district court concluded that Watkins was entitled to habeas relief. *Id.*

## II.

This court reviews *de novo* the district court's determination regarding the timeliness of a habeas petition. *DiCenzi v. Rose*, 452 F.3d 465, 467 (6th Cir. 2006).

## A.

The parties do not dispute that Watkins' supplemental habeas petition was filed after the expiration of the statute of limitations. Rather, their disagreement centers on whether the supplemental petition relates back to the date of the original petition. The State contends that it does not. It argues that the original petition only raised a claim of ineffective assistance of trial counsel for failure to investigate or present a defense *before* trial, which "is based on facts that differ in time and type from a claim regarding the failure to request an evaluation based on behavior *during* trial." CA6 R. 11, Appellant Br. at 34. In response, without mention of any of the facts presented in the original petition, Watkins insists that the facts underlying the amended petition "are simple, straightforward, and uncontroverted, and were clearly alleged in the original pleading." CA6 R. 18, Appellee Br. at 29.

An untimely amendment to a habeas petition "relates back" to an original petition filed within the Antiterrorism and Effective Death Penalty Act's (AEDPA) one-year limitations period if the original petition and the amended petition arise out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(B); *see also* 28 U.S.C. §§ 2242, 2244(d)(1). The Supreme Court in *Mayle* defined the standard for relation back in the context of a habeas petition. There, the petitioner argued that his amended petition, which alleged his Fifth Amendment rights were

violated during pretrial interrogation, related back to his original petition, filed *pro se*, where he argued that the admission of videotaped evidence during trial violated his rights under the Sixth Amendment's Confrontation Clause. 545 U.S. at 648–49, 651–52. The Court emphasized that, in filing the petition, the petitioner must specify all grounds for relief, stating the facts supporting each ground. *Id.* at 649, 655, 661. Consequently, it held that an amended habeas petition does not relate back to the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Rather, to qualify for relation back, the original and amended petitions must "state claims that are tied to a common core of operative facts." *Id.* at 664. The Court cautioned not to read the "conduct, transaction, or occurrence" requirement, so broadly as to render meaningless the statute of limitations. *Id.* at 662–64. Turning to the facts of the case, the Court concluded that the petitioner's untimely amended petition did not relate back to the timely original petition because the two petitions "targeted separate episodes": the pretrial interrogation of the witness, and the petitioner's own interrogation, which occurred "at a different time and place." *Id.* at 660.

Though *Mayle* dealt with two separately designated claims—a Fifth Amendment violation versus a Sixth Amendment violation—its reasoning equally applies to claims with the same designation—here, ineffective assistance of counsel—that do not rely on the same common core of operative facts, or that target separate episodes. For instance, in *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016), the petitioner raised in his original petition a claim that appellate counsel was ineffective for not challenging his career offender enhancement. We held that the claim in the petitioner's amended petition that appellate counsel was ineffective in not challenging the drug amounts used to calculate the petitioner's base offense level "was an entirely new claim." *Id.* Therefore, his amended petition did not relate back to his original petition. *Id.*; *see also Evans v. United States*, 284 F. App'x 304, 305, 313 (6th Cir. 2008) (concluding that the claim in the petitioner's amended petition that trial counsel gave him incorrect advice regarding the sentence he would receive through a plea agreement versus after trial did not relate back to his timely petition raising ineffective assistance of counsel for failure to pursue a particular avenue of impeachment); *Cox v. Curtin*, 698 F. Supp. 2d 918, 931 (W.D. Mich. 2010) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition

to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005))). *But see Cowan v. Stovall*, 645 F.3d 815, 819 (6th Cir. 2011) (stating that the petitioner's amended petition would have related back to the original petition because they both asserted that counsel was ineffective for failure to interview witnesses).

As an initial matter, Watkins' original petition does not raise any facts supporting the underlying ineffective assistance of counsel claim. The only portion of the petition relating to ineffective assistance of counsel reads as follows: "Defendant was denied his state and federal constitutional right to effective assistance of trial counsel, by counsels [sic] failure to investigate and raise a defense, and also ineffective assistance of appellate, by counsel [sic] failure to raise meritorios [sic] issues, and failure to perfect a competent appeal." Original Habeas Petition 11, ECF No. 1, Page ID 11. It says nothing of counsel's failure to request another psychiatric evaluation. It alleges only that trial counsel failed "to investigate and raise a defense." *Id.* Counsel's conduct in investigating before trial and presenting a defense to the jury during trial is a distinct "episode" from counsel's conduct in not requesting that the judge order a fifth psychiatric evaluation during trial. To read the original petition's language more expansively would contravene the Supreme Court's warning against construing "conduct, transaction, or occurrence" so broadly as to render meaningless AEDPA's statute of limitations. *See Mayle*, 545 U.S. at 662–64. Watkins' amended petition, therefore, does not relate back to the original petition.

## B.

Next, regarding Watkins' equitable tolling argument, the State argues that Watkins cannot demonstrate extraordinary circumstances based on his alleged incompetence. First, Watkins alleges he was diagnosed with a mental illness in 2007, not deemed incompetent. Moreover, the State insists, Watkins cannot show that incompetence caused his untimely filing, as illustrated by the fact that, during the limitations period, he raised the instant ineffective assistance of counsel claim in state court through appellate counsel, and filed various *pro se* pleadings. Watkins responds simply that the State's argument "fail[s] to give any weight to the mental illness he suffered at the time he filed his initial § 2254 petition, without the benefit of

counsel, and that the mental illness inhibited his efforts at compiling a comprehensive petition." CA6 R. 18, Appellee Br. at 31.

AEDPA's limitations period is not jurisdictional, so may be tolled for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645–49 (2010). A petitioner is entitled to equitable tolling only if he establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (citation omitted). We have held that a petitioner's mental incompetence can constitute an extraordinary circumstance that tolls the limitations period, but the petitioner bears the burden to establish that "(1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). But we must take care to only apply the equitable tolling doctrine "sparingly." *Id.* at 741.

Watkins' case is similar in some respects to that presented by the petitioner in *Kitchen v. Bauman*, 629 F. App'x 743 (6th Cir. 2015). There, the petitioner alleged that he was mentally incompetent before trial, and that his incompetence carried through to the relevant tolling period. *Id.* at 747–48. However, the court determined that he presented no evidence of his mental health status during the limitations period and that the record suggested that he was stable. *Id.* The court also concluded that any alleged incompetency did not cause the untimely filing. *Id.* The petitioner was declared competent to stand trial twice before he was tried and nothing in the record indicated that his mental illness hindered his ability to assist trial counsel. *Id.* at 748. Moreover, during the limitations period, the petitioner filed a civil suit challenging his confinement, which also indicated that his mental status did not hinder his ability to make timely filings. *Id.*; *see also Ramirez-Matias v. Lynch*, 631 F. App'x 339, 343–44 (6th Cir. 2015) (concluding that though the petitioner may have been mentally incompetent, her ability to reach out to attorneys to discuss her immigration status suggested that her psychological impairments did not prevent her timely filing).

Even assuming that Watkins was diligently pursuing his rights, he cannot establish entitlement to equitable tolling. First, like the petitioner in *Kitchen*, Watkins presents no evidence of his mental health status during the limitations period. The statute of limitations began to run on August 25, 2009, *Watkins*, 143 F. Supp. 3d at 637, over two years *after* Watkins'

2007 diagnosis. Like the petitioner in *Kitchen*, Watkins appears to argue that the 2007 diagnosis carried over into the limitations period. However, this argument fails for several reasons. First, mental illness is not the same as mental incompetence. *See Cowans v. Bagley*, 639 F.3d 241, 247–48 (6th Cir. 2011). Watkins was diagnosed with "Psychotic Disorder NOS" and given a treatment plan that included regular therapy and medication. 2007 Psychiatric Evaluation 1–4, ECF No. 15-23, Page ID 916–19. There is nothing to indicate that this diagnosis altered the previous evaluation deeming Watkins competent. Moreover, even assuming that failure to comply with the treatment plan would render him incompetent, Watkins does not allege that he failed to comply with the plan.

More importantly, Watkins has not established that any alleged incompetency *caused* his untimely filing. *See Ata*, 662 F.3d at 742. In fact, after the limitations period began to run, Watkins filed at least two timely motions in state court, one through counsel and one *pro se*, raising the instant ineffective assistance of counsel claim. Additionally, he timely filed, *pro se*, the original habeas petition. That he was able to make these timely filings indicates that his mental illness was not the cause of his untimely amended habeas petition. *See Kitchen*, 629 F. App'x at 748. Though Watkins faults his mental illness for his failure to compile "a comprehensive petition," CA6 R. 18, Appellee Br. at 31, "the relevant inquiry is whether petitioner's mental incompetency prevented him from filing a *timely* petition, not a meritorious one," *Kitchen*, 629 F. App'x at 748. Consequently, Watkins' "blanket assertion of mental incompetence is insufficient" for equitable tolling. *See Ata*, 662 F.3d at 742.

## III.

For the foregoing reasons, we **REVERSE** the district court's determination that Watkins' amended petition was timely, **DISMISS** the portion of the petition pertaining to the ineffective assistance claim discussed herein, and **REMAND** for the district court to determine the timeliness—and if timely, the merits—of Watkins' remaining claims consistent with the analysis we have employed in this opinion.