RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GARY WATKINS,

                *Petitioner-Appellant*,

    *v.*

GEORGE STEPHENSON, Warden,

                *Respondent-Appellee.*

No. 21-2914

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:10-cv-13199—Arthur J. Tarnow, District Judge.

Decided and Filed:  January 13, 2023

Before:  KETHLEDGE, READLER, and MURPHY, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  James C. Thomas, JAMES C. THOMAS P.C., Sterling Heights, Michigan, for Appellant.  Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

───────────────

**OPINION**

───────────────

MURPHY, Circuit Judge.  When a state prisoner seeks to amend a habeas petition filed in federal court, the prisoner often will encounter a problem: the one-year statute of limitations will have expired by the time of the amendment.  *See* 28 U.S.C. § 2244(d)(1).  If the prisoner timely filed the original petition, this problem may not be insurmountable.  Under Federal Rule of Civil Procedure 15(c)(1)(B), the amended petition will "relate[] back to the date" of the original petition as long as the new claims arose from the same "conduct, transaction, or

occurrence" as the old ones. But sometimes a court will dismiss a prisoner's original petition on procedural grounds, and the prisoner will seek to file a new petition in a later suit. Can the petition in the new suit "relate back to the date" of the petition in the dismissed suit, such that Rule 15 allows the prisoner to rely on that earlier date to determine the new suit's timeliness?

Gary Watkins's appeal in this habeas case raises that question. Like every other circuit court to address it, we hold that Rule 15 does not apply across cases in this fashion. And our prior decision in this case forecloses Watkins's other attempts to establish the timeliness of his amended petition. *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 849–52 (6th Cir. 2017). We thus affirm the district court's dismissal of his petition.

I

Watkins lived next door to Quincey Varner and Varner's girlfriend in Ypsilanti, Michigan. In January 2006, Watkins reneged on a deal to sell his car to Varner, triggering a feud between them. On January 9, Varner's girlfriend spoke with Watkins and thought they had resolved their differences. Around 7:00 p.m. the next day, Varner dropped her off at her job as a nurse at a nearby hospital.

A half hour later, police received reports of shots fired at Watkins's house. Officers arrived to find a bleeding Varner lying unconscious in Watkins's driveway. Standing nearby, Watkins told the officers to call an ambulance because he had shot Varner. The paramedics who treated Varner spotted no weapons on or around him, but he had two gunshot wounds in his chest, one in his thigh, one in his posterior, one in his shin, and one in his arm. A trail of blood led from Varner's location back to Watkins's house. Officers discovered a handgun just inside Watkins's home and a double-barreled shotgun in his living room. Varner died hours later at the hospital where his girlfriend worked.

During interrogation, Watkins confessed to shooting Varner. According to Watkins, the two argued in his house and wrestled over his shotgun. After regaining control of the shotgun, Watkins shot Varner with each barrel in quick succession. He then retrieved his handgun as an injured Varner fled to the yard. Catching up to Varner outside, Watkins continued to shoot at him while screaming "die mother fucker, die." Tr., R.15-10, PageID 496.

The State of Michigan charged Watkins with several crimes. He began to engage in concerning behavior in jail, such as refusing to eat and urinating on himself. This behavior led to four pretrial psychological evaluations. The first evaluator found Watkins incompetent to stand trial but opined that he could become competent in a hospital setting. A second evaluator reversed course, concluding that Watkins had been acting bizarrely to fake incompetence. A third agreed that his odd behavior resulted from "malingering" rather than "mental illness." Eval., R.17-1, PageID 1157. And a fourth found insufficient evidence to conclude that Watkins lacked criminal responsibility for his actions.

Watkins's problematic behavior continued at trial. After he flipped over a counsel table, the judge removed him to a secured room to watch the trial. While there, he spat on an officer and "managed to urinate on the television and the" cart on which it sat. Tr., R.15-9, PageID 455. When Watkins testified, he admitted that he had shot Varner but claimed that the shooting had occurred at a different time and location.

The jury convicted Watkins of second-degree murder, assault with intent to murder, and two counts of using a firearm in commission of a felony. The court sentenced him to a prison term of 2 years for the firearm offenses to run consecutively to a prison term of 25 to 50 years for the murder and assault convictions.

In 2008, Watkins filed a pro se habeas petition under 28 U.S.C. § 2254. The district court ordered Watkins to pay the filing fee or apply for leave to proceed *in forma pauperis*. Watkins did neither. The court thus dismissed his petition without prejudice for failure to prosecute.

In 2010, Watkins returned to federal court. He filed a pro se document captioned a "motion for equitable tolling to allow petitioner's pro se petition for writ of habeas corpus to proceed timely." Pet., R.1, PageID 1. This filing alleged four claims: that the trial court committed two sentencing errors, that his counsel provided ineffective assistance by failing "to investigate and raise a defense," and that the prosecutor committed misconduct. *Id.*, PageID 11. The district court construed this motion as a second habeas petition and stayed this new federal case to allow Watkins to exhaust his claims in state court.

In 2014, after the state courts rejected his claims, Watkins filed a "supplemental" petition in the stayed federal case. Now assisted by counsel, he raised six amended claims: (1) that counsel provided ineffective assistance by failing to seek a fifth competency evaluation at trial; (2) that counsel provided ineffective assistance by failing to request self-defense jury instructions; (3) that the trial court's verdict form violated his jury-trial right; (4) that the court violated his right to represent himself; (5) that a communication breakdown between Watkins and his counsel deprived him of the assistance of counsel; and (6) that the trial court and defense counsel wrongly allowed a biased juror to sit.

The district court reopened the case. The court construed Watkins's supplemental petition as a motion to amend his 2010 petition, and it granted the motion. It later awarded habeas relief to Watkins. The court agreed with his first claim that his counsel had wrongly failed to request another competency evaluation after his trial outbursts. In the process, it rejected the Warden's argument that this claim was untimely. It reasoned that the claim related back to the date of Watkins's 2010 petition under Rule 15 because both petitions raised ineffective-assistance claims. It also equitably tolled the limitations period due to Watkins's mental-health struggles.

The Warden appealed. We reversed on statute-of-limitations grounds. *Watkins*, 854 F.3d at 849–52. The parties agreed that Watkins had filed his amended petition outside the limitations period. *Id.* at 849. And we held that Watkins's successful ineffective-assistance claim in the amended petition did not "relate back" to the generic ineffective-assistance claim in his 2010 petition. *Id.* at 850–51. We next held that Watkins had not shown an entitlement to equitable tolling. *Id.* at 851–52. We reasoned that he had introduced no evidence about his mental health after his conviction became final. *Id.* And we added that his ability to seek timely relief in state court showed that his mental-health problems had not prevented timely litigation. *Id.* at 852.

On remand, the district court held that the statute of limitations barred Watkins's five remaining claims. Watkins argued, for the first time, that his amended petition actually related back to the 2008 petition that the court had previously dismissed, but the court rejected this argument. It also held that the remaining claims lacked a connection to any claim in the 2010

petition. This time, Watkins appealed. He raises legal issues that we review de novo. *See Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 246–47 (6th Cir. 2000).

II

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "1-year period of limitation" on state prisoners who seek to challenge their state convictions in federal court under 28 U.S.C. § 2254. *Id.* § 2244(d)(1). The parties agree that Watkins filed his 2008 and 2010 petitions within this statute of limitations. The federal habeas laws also allowed Watkins to amend a habeas petition "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; *see Mayle v. Felix*, 545 U.S. 644, 654–55 (2005).

Federal Rule of Civil Procedure 15 sets forth those procedural rules. It permits a party to amend a complaint in a typical civil case or a petition in a habeas case with "leave" of a district court and directs the court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Mayle*, 545 U.S. at 655. Here, the district court allowed Watson to file six claims in an amended petition that replaced the four claims in his 2010 petition. But the decision to grant Watkins's motion to amend did not automatically render his six new claims timely. Their timeliness presumptively depended on whether Watkins had filed the amendment within the one-year statute of limitations. *See Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 2016). And the parties agree that Watkins did not do so. *See Watkins*, 854 F.3d at 849.

That said, Rule 15 sometimes allows a prisoner to invoke the original petition's filing date when considering the timeliness of an amended petition that would otherwise fall outside the statute of limitations. *See Cowan v. Stovall*, 645 F.3d 815, 818 (6th Cir. 2011). It indicates: "An amendment to a pleading relates back to the date of the original pleading when," as relevant here, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

Watkins contends that this relation-back rule renders his amended claims timely. Specifically, Watkins argues that all six claims relate back to the claims in his *2008 petition*. When discussing this argument, even the Warden concedes that the 2008 petition raised at least

one of the claims (the juror-bias claim) that Watkins asserted in his amended petition. Alternatively, Watkins argues that the five amended claims that we did not consider in our prior decision relate back to the *2010 petition*. We thus must address two questions: Can an "amendment" under Rule 15 relate back to a dismissed petition from a separate case? And did any amended claim arise from the same "conduct, transaction, or occurrence" as the claims in the 2010 petition?

*Question 1: Can an "amendment" under Rule 15 relate back to a dismissed petition?* No. Both text and precedent foreclose Watkins's attempt to tie his amended petition to the date of a pleading in a different case. To begin with, Rule 15's text contemplates that the relevant filings will arise in the same case. It does not say that an amendment can "relate[] back to the date" of any pleading filed anywhere. Fed. R. Civ. P. 15(c)(1). It says that the amendment can "relate[] back to the date of *the original* pleading[.]" *Id.* (emphasis added). The use of the definite article ("the") shows that Rule 15 refers to one specific document. *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019); *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). The adjective "original" identifies that document: the initial complaint (or petition) in the case in which the amendment occurs. *See Mayle*, 545 U.S. at 655. No reasonable person versed in legal language would describe a habeas petition in a different case as the "original" pleading in a case currently pending in the court.

Watkins's contrary interpretation could effectively eliminate AEDPA's statute of limitations. *Cf. Mayle*, 545 U.S. at 662. The Federal Rules of Civil Procedure permit plaintiffs to voluntarily dismiss a case without a court order or a defendant's approval if they do so early enough in the suit. Fed. R. Civ. P. 41(a)(1)(A)(i). Suppose a prisoner files a habeas petition and then voluntarily dismisses it. That tactic could allow the prisoner to file a second (otherwise untimely) petition decades later by relying on the date of the dismissed petition for statute-of-limitations purposes. *See Graham v. Johnson*, 168 F.3d 762, 779–80 (5th Cir. 1999).

For these reasons, every circuit court to address this issue (nine, by our count) has interpreted Rule 15 to bar prisoners from relying on the date of a dismissed petition. *See Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001); *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000); *Jones v. Morton*, 195 F.3d 153, 160–61 (3d Cir. 1999); *Graham*, 168 F.3d at

779–80; *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008); *White v. Dingle*, 616 F.3d 844, 847 (8th Cir. 2010); *Rasberry v. Garcia*, 448 F.3d 1150, 1155 (9th Cir. 2006); *Marsh v. Soares*, 223 F.3d 1217, 1219–20 (10th Cir. 2000); *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam). Outside this habeas context, we have also rejected the argument that the initial complaint in a new case can "relate back" to another complaint in a dismissed case. *See State Bank of Coloma v. Nat'l Flood Ins. Program*, 851 F.2d 817, 820 (6th Cir. 1988); *see also Velez-Diaz v. United States*, 507 F.3d 717, 719 (1st Cir. 2007) (citing cases); *Carter v. Tex. Dep't of Health*, 119 F. App'x 577, 581 (5th Cir. 2004) (per curiam) (same). We now extend this rule to the habeas context. Watkins cannot rely on his dismissed 2008 petition to save the untimely claims in his amended petition.

*Question 2: Did any amended claim arise from the same "conduct, transaction, or occurrence" as the claims in the 2010 petition?* No. Our prior decision in Watkins's case largely disposes of this argument that his amended claims "arose out of the conduct, transaction, or occurrence" as the claims in his 2010 petition. Fed. R. Civ. P. 15(c)(1)(B); *see Watkins*, 854 F.3d at 849–51. The Supreme Court has narrowly interpreted the phrase "conduct, transaction, or occurrence" in this habeas context. *See Pinchon v. Myers*, 615 F.3d 631, 642 (6th Cir. 2010) (discussing *Mayle*, 545 U.S. at 656–64). A prisoner cannot assert merely that the claims in the original and amended petitions all relate to the same trial or conviction. *Mayle*, 545 U.S. at 662. To relate back, the amended claims must "share a 'common core of operative facts'" with the original claims. *Cowan*, 645 F.3d at 818 (quoting *Mayle*, 545 U.S. at 664). So any "new" facts generally may differ only in specificity (not in kind) from those originally alleged. *Id.* at 819.

Our decisions in *Cowan* and *Watkins* demonstrate what this rule requires. In *Cowan*, we held that an amended ineffective-assistance claim alleging that counsel had failed to interview specific witnesses related back to an original ineffective-assistance claim alleging that counsel had "failed to investigate" and find "witnesses [who] would have supported" the defense. *Id.* (emphasis omitted). The new claim "merely added more detail" to the original. *Id.* In *Watkins*, by contrast, we held that Watkins's amended ineffective-assistance claim that counsel wrongly failed to request another competency evaluation did not relate back to the original ineffective-

assistance claim that counsel failed "to investigate and raise a defense." 854 F.3d at 850. The two allegations challenged different "episodes" in that one concerned a defense on the merits and the other concerned Watkins's competency. *Id.* at 850–51; *see also Hill*, 842 F.3d at 924–25.

Like the claim that we already rejected, Watkins's five remaining claims in his amended petition are different in "kind" (not just "specificity") from the four that he raised in the original 2010 petition. *Cowan*, 645 F.3d at 819. Watkins does not even attempt to show that three of the amended claims—that the trial court's verdict form violated his jury-trial right, that the trial court violated his right to represent himself at trial, and that the trial court allowed a biased juror—have any factual connection to his original claims whatsoever. Recall that his original petition alleged two sentencing errors, a generic ineffective-assistance claim, and a prosecutorial-misconduct claim. So these three amended claims alleged errors in the way that the trial court managed the trial procedure, whereas the original claims alleged errors at the later sentencing, by Watkin's trial counsel, or by the prosecutor. *See Mayle*, 545 U.S. at 651–52, 657; *Pinchon*, 615 F.3d at 643; *Wiedbrauk v. Lavigne*, 174 F. App'x 993, 1002 (6th Cir. 2006).

The remaining ineffective-assistance claims in Watkins's amended petition fare no better. Those claims criticized trial counsel for failing to request self-defense jury instructions, failing to object to the allegedly biased juror, and failing to communicate with Watkins before trial. As noted, his original ineffective-assistance claim alleged that his attorney failed "to investigate and raise a defense." *Watkins*, 854 F.3d at 850. The amended claims do not relate back to this assertion because it was "completely bereft of specific fact allegations[.]" *Hill*, 842 F.3d at 924. The original claim failed to allege any facts, to identify counsel's investigatory failures, or to specify the defense that counsel failed to raise. *See Watkins*, 854 F.3d at 850. In addition, to the extent that the original claim had any substance, it concerned counsel's failure to introduce evidence of an unspecified defense. But his amended claims concerned other matters. Two raised objections about trial procedure (allowing a biased juror and failing to request jury instructions), and the other objected to counsel's communications with Watkins. His new claims thus go well beyond merely adding "more detail" to what Watkins previously alleged. *Cowen*, 645 F.3d at 819.

In response, Watkins cites our caselaw recognizing that a district court should freely grant a motion to amend a habeas petition as long as it will not prejudice the other side. *See Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998). He notes further that the Warden has not shown prejudice. Watkins overlooks that the district court here *did* grant his motion to amend. But that decision does not establish the timeliness of the amended claims. *See Hill*, 842 F.3d at 922–23.

Watkins next argues that we should equitably toll AEDPA's limitations period because of his mental-health struggles. *See Holland v. Florida*, 560 U.S. 631, 645–49 (2010). In our last appeal, however, we rejected his argument that these same mental-health struggles qualified as the type of extraordinary circumstance that would justify equitable tolling. *See Watkins*, 854 F.3d at 851–52. Watkins did not present evidence of his mental health since his conviction, and his mental health did not prevent him from timely pursuing his claims in state court. *Id.* Watkins offers no grounds to reassess this analysis. *Cf. Thomas v. Mahoning Cnty. Jail*, 2017 WL 3597428, at *3 (6th Cir. Mar. 21, 2017) (order) (citing *United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006)).

Watkins lastly asks us to reconsider our prior decisions in *Watkins* and *Hill*. But a panel of this court cannot overrule our prior published precedent. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

We affirm.