The court delivered a PER CURIAM opinion. MOORE, J, (pp. 467-70), delivered a separate dissenting opinion. ORDER PER CURIAM. Alva Campbell, Jr., an Ohio prisoner sentenced to death, moves this court to remand this case to the district court for initial consideration of his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. The warden has filed a response -opposing his motion. Upon review, we deny Campbell’s motion. I An Ohio jury convicted Campbell of four counts, of aggravated murder, four counts of aggravated robbery, two counts of attempted kidnapping, and one count each of kidnapping, felonious assault, escape, and having a weapon under a disability. The jury recommended that Campbell be sentenced to death. The trial court adopted this recommendation and sentenced Campbell accordingly. On direct appeal, the Ohio Supreme Court affirmed Campbell’s convictions, but the court remanded the case to the trial court for resentencing due to a procedural error. State v. Campbell, 90 Ohio St.3d 320, 738 N.E.2d 1178, 1205 (2000). On remand, the trial court resen-tenced Campbell to death. The Ohio Supreme Court affirmed this sentence. State v. Campbell, 95 Ohio St.3d 48, 765 N.E.2d 334, 344 (2002). In 2005, Campbell filed his first § 2254 petition, alleging twelve grounds for relief. The district court dismissed his petition, and this court affirmed that decision. Campbell v. Bradshaw, 674 F.3d 578, 598 (6th Cir. 2012). In 2015, Campbell filed a second § 2254 petition, this time challenging Ohio’s lethal injection protocol. The magistrate judge ordered that the case be transferred to this court for initial review because Campbell was attempting to file a “successive” habeas petition, and the magistrate judge repeatedly rejected Campbell’s challenges to that order. See Campbell v. Jenkins, No. 2:15-CV-1702, 2017 WL 1196167 (S.D. Ohio Mar. 31, 2017); Campbell v. Jenkins, No. 2:15-CV-1702, 2017 WL 978122 (S.D. Ohio Mar. 14, 2017). Campbell appealed this decision to the district judge, who affirmed the order and transferred Campbell’s petition to us for initial consideration. Campbell v. Jenkins, No. 2:15-CV-1702, 2017 WL 3524686 (S.D. Ohio Aug. 16, 2017). II Before a habeas petitioner can file a “second or successive” § 2254 petition, he must receive authorization from the court of appeals. 28 U.S.C. § 2244(b)(3)(A); In re Salem, 631 F.3d 809, 812 (6th Cir. 2011). To obtain this authorization, the petitioner must make- a prima facie showing either that: (1) a new rule of constitutional law applies to his case that the Supreme Court made retroactive to cases on collateral review; or (2) a newly discovered factual predicate exists which, if proven, sufficiently establishes that no reasonable fact-finder would have found the petitioner guilty of the underlying offense but for constitutional' error. 28 U.S.C. §§ 2244(b)(2) and 2244(b)(3)(C); Magwood v. Patterson, 561 U.S. 320, 330, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010). In this context, a prima facie showing means sufficient allegations of fact combined with some documentation that would warrant fuller exploration in the district court. Keith v. Bobby, 551 F.3d 555, 557 (6th Cir. 2009). However, in limited situations, a § 2254 petition is not considered “second or successive” within the meaning of § 2244(b) even though the petitioner filed a previous habeas application. See Storey v. Vasbinder, 657 F.3d 372, 376 (6th Cir. 2011), Under § 2244(b), the phrase “second or successive” is not self-defining. Panetti v. Quarterman, 551 U.S. 930, 943, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007); Salem, 631 F.3d at 812. Rather, it is a term of - art given substance by the Supreme Court’s habeas cases. Slack v. McDaniel, 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); Salem, 631 F.3d at 812. For example, a habeas petition is not considered “second or successive” under § 2244(b) when the claim has been raised in a prior petition, but dismissed as unripe, although other claims in the initial petition were decided on the merits. Stewart v. Martinez-Villareal, 523 U.S. 637, 643-46, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). Even if the claim was not presented in an earlier petition, a subsequent petition raising the claim does not constitute a “successive” petition for purposes of § 2244(b) if the claim would have been dismissed as unripe in the initial petition. Panetti, 551 U.S. at 945, 127 S.Ct. 2842. Nor do the successive petition restrictions apply if the first petition was dismissed for lack of exhaustion. Slack, 529 U.S. at 478, 487, 120 S.Ct. 1595. The restrictions also do not apply , if an intervening state court judgment (such as a resen-tencing) occurred after the first habeas petition was decided. Magwood, 561 U.S. at 335, 339, 130 S.Ct. 2788; King v. Morgan, 807 F.3d 154, 157 (6th Cir. 2015). This court reviews de novo the question of whether Campbell’s current petition is “second or successive” within the meaning of § 2244(b). See Lang v. United States, 474 F.3d 348, 351 (6th Cir. 2007). It is undisputed that Campbell is attempting to challenge the same state-court judgment as in his prior § 2254 petition. Thus, a federal habeas court must consult abuse-of-the-writ principles, as modified by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to determine whether Campbell’s current petition is “second or successive.” See Askew v. Bradshaw, 636 Fed.Appx. 342, 347 (6th Cir. 2016). Under pre-AEDPA caselaw, a petitioner abused the writ by raising a claim in a subsequent petition that could have been raised in an earlier petition, regardless of whether the failure resulted from inexcusable neglect or a deliberate choice. McCleskey v. Zant, 499 U.S. 467, 489, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Ill Campbell maintains that his current claims are properly raised in a habeas proceeding. Because the law on this subject is not clear and has been the subject of several recent, published decisions by this Circuit and the Supreme Court, we pause at the outset to clarify the standard. A Although many citizens have deep-seated objections to the death penalty, execution is not per se unconstitutional. Baze v. Rees, 553 U.S. 35, 47, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). Execution necessarily involves some risk that the prisoner will, indeed, feel pain. Id. To some extent, this is the point: Capital punishment alone “has the potential to make the offender recognize, at last, the gravity of his crime and to allow the community as a whole ... to affirm its own judgment that the culpability of the prisoner is so serious that the ultimate penalty must be sought and imposed.” Panetti, 551 U.S. at 958, 127 S.Ct. 2842. The Eighth Amendment interrupts the imposition of death only to ensure that the prisoner is not wantonly subjected to cruel amounts of pain, Baze, 553 U.S. at 47-50, 128 S.Ct. 1520, and to prevent the execution of “those who are unaware of the punishment they are about to suffer and why they are to suffer it.” Panetti, 551 U.S. at 957, 127 S.Ct. 2842 (quoting Ford v. Wainwright, 477 U.S. 399, 422, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (Powell, J., concurring)). These two limitations represent two separate facets of the Eighth Amendment. Ford and Panetti recognized that, although execution is permissible, there is a point where a prisoner’s ability to perceive reality is so diminished that imposing the sentence of death becomes constitutionally impermissible. Under such circumstances, the road from sanity to insanity ordinarily being a one-way street, a sentence of death—although legally pronounced—cannot legally be carried out. Baze, on the other hand, permits a prisoner to acknowledge the legality of his sentence while asserting an Eighth-Amendment civil-rights claim under 42 U.S.C. § 1983 to restrain the government from torturing him on his way to the next world. Because a Baze challenge concedes the legality of the death sentence itself, to obtain injunctive relief, a prisoner must show: (1) that the method of execution he currently faces is accompanied by a very high probability that he will experience severe pain, and (2) a “feasible, readily implemented” and significantly less painful alternative. Baze, 553 U.S. at 52, 128 S.Ct. 1520. This substantive backdrop may be helpful to understanding the procedural labyrinth at issue in this case. Federal law provides two methods for a prisoner to challenge his conviction or sentence: habe-as corpus and 42 U.S.C. § 1983. Hill v. McDonough, 547 U.S. 573, 579, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006). Identifying the proper procedure for a challenge is not always an easy task. Id. However, the nature of the relief sought in every case acts as a guide. It is undisputed that there are some post-conviction claims that cannot be brought under § 1983. A prisoner who seeks a judgment declaring “the fact or duration” of his sentence unconstitutional must proceed under the habeas statutes, and cannot proceed under § 1983. Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The reason for this is simple: a judgment in a civil tort action lacks the authority to set aside a criminal conviction or its accompanying sentence. See id. at 486, 114 S.Ct. 2364. However, in Nelson v. Campbell, the Court suggested in dicta that some method-of-execution claims could be brought under either scheme. 541 U.S. 637, 644, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). It noted hypothetically that, in a state that only permits lethal-injection executions, “a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.” Id. (emphasis added). The Court reiterated this suggestion in Hill, but declined to decide the question. Instead, the Hill Court narrowed Nelson, holding that if a method-of-execution claim concedes that some other type of execution would be constitutional, then the claim must be brought under § 1983. Hill, 547 U.S. at 580-81, 126 S.Ct. 2096. Thus, after Hill, the only potential, yet-to-be-recognized Nelson claim would be a method-of-execution argument asserting that there is no constitutional means by which the prisoner could be executed. In Adams v. Bradshaw (Adams II), we declined to read Hill as ending this debate. 644 F.3d 481, 482-83 (6th Cir. 2011). In Adams II—prior to any factual development—the warden argued that the federal court lacked jurisdiction to review any claim in habeas if it could also have been brought under § 1983. Id. We held that this argument was far too broad, noting that some constitutional claims can indeed be brought under both regimes. Id. at 483. We also distinguished Hill, pointing out that Adams had not “conceded the existence of an acceptable alternative procedure.” Id. Because the record lacked substance, Adams II remanded the petition to the district court for further proceedings. Id. at 482. Thus, Adams II was simply a bare recognition that the two remedies were not mutually exclusive in every case, and that Adams was entitled to pursue factual development of his claim. After Adams II, the Supreme Court decided Glossip v. Gross, - U.S. -, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015). In Glossip, the Court addressed a Baze-style § 1983 challenge to an execution protocol. Id. at 2738-39. In an attempt to escape Baze’s requirement that they identify an alternative execution protocol (because they could not do so), the petitioners pointed to a procedural wrinkle in Hill, where the Court refused to read § 1983 as requiring prisoners to plead an alternative method. Id. The Court responded that this mischaraeterized Hill’s holding. Id. Instead, the Court stated that, in Hill, “we held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner’s conviction or death sentence.” Id. (emphasis added). It then pointed out that while § 1983 might not require a plaintiff to plead an alternative method, the Eighth Amendment does impose such a requirement. Id. Glossip then proceeded to untangle the appellants’ (and the dissent’s) attempt to eviscerate Baze. The majority reasoned that there was no difference between a categorical prohibition .on the death penalty and a standard, that permitted a Baze plaintiff to win relief without offering an alternative method. Id, at 2739. While arguing against an alternative-method requirement, the dissent suggested, that “more primitive” means of execution—i.e,, execution by firing squad, electric chair, or gas chamber—might also be unconstitutional,. Id. at 2790-96 (Sotomayor, J,, dissenting).. But the majority responded to this with a pointed rhetorical question; “If states cannot return to any of the ‘more primitive’ methods used in the past and if no drug that meets with the principal dissent’s approval is available for use in carrying out a death sentence, the logical conclusion is clear. But we have time and time again reaffirmed that capital punishment is not per se unconstitutional.” Id. at 2739. In sum, Glossip held that a Baze challenger has no claim unless he can identify a constitutional means by which he can be executed. B Notice that this closes the final path into habeas court left open by Hill and Adams II. No one here disputes that a death-penalty challenge is not cognizable in habeas unless a defect impairs the very fact of the death sentence itself. Glossip, 135 S.Ct. at 2738-39; Hill, 547 U.S. at 579, 126 S.Ct. 2096; Nelson, 541 U.S. at 644, 124 S.Ct. 2117; Heck, 512 U.S. at 481, 114 S.Ct. 2364; Adams II, 644 F.3d at 483. The reasons for this are prescribed by the statute. A § 2254 habeas court only has jurisdiction to act in favor of “a person in custody pursuant to the judgment of a State court.” 28 U.S.C. § 2254(a) (emphasis added). An unconstitutional death sentence is a form of custody that the writ can reach, because it is a judgment imposed without authority. See Irvin v. Dowd, 366 U.S. 717, 728-29, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); U.S. Const., Art. VI, § 2. But as Hill recognized, an illegal method of execution has nothing to do with the judgment itself—unless, of course, the prisoner asserted that all available means of execution are unconstitutional. Hill, 547 U.S. at 580-81, 126 S.Ct. 2096. In that case, it would effectively, render the judgment void and unenforceable. This is precisely the argument a claimant cannot make after Glossip. Indeed, the Court expressly refused to countenance the possibility that a state could be left without any lawful means of execution. Glossip, 135 S.Ct. at 2739. In the majority’s view, this would be the same as an outright ban on the death penalty itself. Id. Glossip therefore closed the hypothetical door left open by Nelson, Hill, and Adams II. No longer can a method-of-execution claim impair a death sentence itself. And since a method-of-execution claim can no longer “attack the validity of the prisoner’s conviction or death sentence,” a habeas court cannot áct upon it. Id. at 2738. Thus, the Glossip Court necessarily barred all habeas petitions challenging “a particular application of a particular protocol to a particular person” as unconstitutionally painful. In re Tibbetts, 869 F.3d 403, 406 (6th Cir. 2017). These challenges are properly remedied by an injunction prohibiting the state from taking certain actions, rather than a writ of habeas corpus that vacates the sentence entirely. . A review of. fundamental habe-as and § 1983 principles confirms that this is the correct view of the law. Only-when a serious error infects the very fact of a death sentence can the writ grant relief. See Heck, 512 U.S. 477, 481, 114 S.Ct. 2364; Buck v. Davis, - U.S. -, 137 S.Ct. 759, 777, 197 L.Ed.2d 1 (2017). This principle arises because habeas relief does not exist to ferret out every constitutional violation, or even to directly prohibit the government from breaking the law; instead, it exists to relieve the prisoner of an unlawful sentence. See, e.g., Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Gall v. Scroggy, 603 F.3d 346, 353 (6th Cir. 2010). To that end, the writ necessarily “provides the petitioner the right to relief from all direct and collateral consequences of the .unconstitutional [sentence].” Gall, 603 F.3d at 353 (emphasis added). Thus, if a petitioner’s legai theory would not inherently require the nullification of his death sentence, he has no business proceeding in a habeas court. The Great Writ is not concerned with the piecemeal reformation of an imperfect criminal justice system. In contrast, § 1983 is engineered to accomplish this lofty goal. The statute empowers a court to enjoin, “in equity,” “the deprivation of any rights, privileges, or immunities secured by the Constitution and laws” of the United States, 42 U.S.C, § 1983 (emphasis added). When properly invoked, the statute can be used to compel the government to recognize that even the guilty have rights, and that even a conviction or death sentence does not deprive a person of their humanity, See, e.g., Baze, 553 U.S. at 52, 128 S.Ct. 1520; Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Indeed, Ohio death-row inmates—including Campbell—are currently litigating the constitutionality of the protocol in a § 1983 action, seeking a declaration that Ohio’s execution protocol is torturously painful. See In re Ohio Execution Protocol Litig., No. 2:11-cv-1016 (S.D. Ohio). In fact, Campell’s motion for a preliminary injunction to stay execution is set for hearing this very week. Ultimately, this is the relief that all method-of-execution claims seek: an order directed at state officials, declaring that the state’s ends do not justify its means, and requiring the state to find another, less cruel way to enforce a judgment of death against the prisoner. C One wrinkle remains. After Glossvp was decided, the Adams case returned to this Court. Adams v. Bradshaw, 826 F.3d 306 (6th Cir. 2016) (Adams III). Adams III came on appeal after our remand to the district court resulted in development of the facts. Id. at 309. The factual development revealed that Adams was protesting the “psychological toll” resulting from Ohio’s recent changes to its lethal-injection protocol—facts not presented in Adams II. Id. at 320. We immediately responded to this revelation by holding that Adams “failed to present this claim to the state courts, nor did he raise it in his habeas petition.” Id. This failure, as a matter of law, barred Adams from pursuing the claim in habeas. Id.; 28 U.S.C. § 2254(b); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Notwithstanding the procedural default, the panel proceeded to speculate in dicta about the viability of a psychological-torment claim. Adams III, 826 F.3d at 320. It ultimately found the claim unsupported by the substantive law. Even then, the panel proceeded to discuss—again in dicta—-the holding of Adams II in light of Glossip. Id. at 321. It reiterated that “Adams’s case is distinguishable from Hill because Adams argues that lethal injection cannot be administered in a constitutional manner, and that his claim ‘could render his death sentence effectively invalid.’ ” Id. at. 321 (quoting Hill, 547 U.S. at 580, 126 S.Ct. 2096). Therefore, “to the extent that [a petitioner] challenges the constitutionality of lethal injection in general and not a lethal-injection protocol, his claim is cognizable in habeas.” Id. We think this dictum mischaracterizes both Adams II and Glossip. And, of course, dictum in a prior decision—as opposed to a holding—does not bind future panels, including this one. 6th Cir. R. 32.1(b); United States v. Turner, 602 F.3d 778, 785-86 (6th Cir. 2010) (explaining that statements which are “not necessary to the outcome” are not binding on later panels). The Adams III panel had already concluded that the petitioner’s claim was both procedurally defaulted and forfeited. Adams III, 826 F.3d at 320. And although we may choose to excuse forfeiture in an exceptional case, we cannot ignore procedural default absent an express finding of cause and prejudice. Wainwright, 433 U.S. at 86-87, 97 S.Ct. 2497. Thus, the statements “necessary” to the decision in Adams III ended when the panel acknowledged the default and forfeiture without any indication that an exception was present. Adams III, 826 F.3d at 320. Thus, to the extent that Adams III purported to permit Baze-style habeas claims that refuse to concede the possibility of an acceptable means of execution, it is not controlling. Since Glossip’s holding directly addressed that question, it is binding on us, and we follow it today. In doing so, we do not intend to diminish the importance or correctness of the holding in Adams II that § 1983 and habeas are not mutually exclusive as a per se rule. All Baze and Glossip require is that—in the peculiar context of method-of-execution claims—the death-row inmate must proceed under § 1983. IY Having clarified the standard, we examine Campbell’s motion. From our reading, we discern three arguments: (1) that recent changes to Ohio’s execution protocols raise new factual claims that could not have been brought in his first habeas petition; (2) that his newly worsened medical conditions render all lethal injections unconstitutionally painful; and (3) that there is no meaningful difference between mental incompetency (which precludes execution under the Eighth Amendment) and his severe physical ailments. See Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Campbell contends that since Ohio only executes prisoners by lethal injection, accepting any of these positions requires us to vacate his death sentence, as Ohio would be left with no constitutional means to execute him. We disagree. A We first address Campbell’s objection to the shifting execution protocols. He notes that Ohio has repeatedly changed its lethal injection protocols since 2005, as certain drugs used in the process became increasingly difficult to acquire. He also argues that the state has experienced difficulties in implementing these protocols. He contends that he could not have raised these concerns in his first § 2254 habeas petition and that he has filed them “when the claim is first ripe.” Panetti, 551 U.S. at 947, 127 S.Ct. 2842. We have no quarrel with this statement as a practical matter— obviously Campbell is not required to predict the trajectory of Ohio’s execution practices. But that does not change the fact that, in this respect, he has not raised a habeas claim. If we were to hold, today, that Ohio’s lethal-injection protocol has become so erratic and unpredictable that it is now “cruel and unusual in the same way that being struck by lightning is cruel and unusual,” Furman v. Georgia, 408 U.S. 238, 309, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring), that order would not impair the validity of Campbell’s death sentence at all. The fact that Ohio currently permits execution only by lethal injection does not change that fact. The Ohio legislature could, tomorrow, enact a statute reinstating the firing squad as an alternative method of execution. See, e.g., Utah H.B. 11, Death Penalty Procedure Amendments, § 77-18-5.5(b)(4) (2015) (“If a court holds that execution by lethal injection is unconstitutional as applied, the method of execution for that defendant shall be by firing squad.”). In other words, our decision would not be an order setting aside Campbell’s death sentence. It would be an injunction against the Ohio Department of Rehabilitation and Correction, forbidding it from killing Campbell by lethal injection. The State of Ohio could still execute Campbell—it would simply need to find a method that comports with the Eighth Amendment. Thus, while the new facts alleged by Campbell were previously unavailable, they do not create a predicate for any new habeas claims. His claim may be newly ripe, but Campbell is trying to pick an apple from the wrong tree. B Campbell next argues that his deteriorating physical condition makes all methods of lethal injection unconstitutional as to him. Because his health has significantly worsened since the filing of his original habeas petition, he maintains that these are new facts making his claim “ripe” for consideration in a “successive” habeas petition. Specifically, he contends that the pain caused by the “air hunger” inherent in a lethal injection would be magnified exponentially by his new respiratory ailments. He attempts to fit this claim into the habeas mold by asserting that this “paradoxical reaction to the administration of any lethal injection drug ... render[s] any attempt of the state to execute him [given the unavailability of alternative methods] unconstitutional.” Petr.’s Mot. to Remand, at 18-19. Therefore, he says, we must vacate his death sentence. The problem is that Campbell has pled an incomplete Baze challenge that fails as a matter of law after Glossip. A prisoner who challenges a method of execution as unconstitutionally painful must identify an alternative means by which he may be executed. Glossip, 135 S.Ct. at 2739. Campbell’s failure to do so would require any federal court to either dismiss the claim or require him to amend his pleadings. Id. Glossip makes clear that a prisoner cannot invalidate his death sentence simply by asserting that every method offered by state statute will be unconstitutionally painful. Id. And as we explained above, the Court’s decision to preclude this argument effectively divests us of habeas jurisdiction over such a claim. In reaching this conclusion, we do not diminish the gravity of Campbell’s allegations. We suppose that his claims, if substantiated, could raise a significant problem with administering a lethal injection. Nor do we find—as we did with the petitioner in Tibbetts—that Campbell could have raised these specific allegations in 2005. Tibbetts, 869 F.3d at 407. We simply hold that, on these facts, Campbell has not presented any new habeas claims that (if meritorious) would require us to vacate his death sentence. As we noted in rejecting Campbell’s first argument—even if we were to agree with Campbell on the substance here, Ohio would still be permitted to execute him. The proper method for Campbell to bring these claims is in a § 1983 action under Baze—as he has done in the district court. See In re Ohio Execution Protocol Litig. If he prevails on the merits, the district court will enjoin Ohio officials from executing Campbell by lethal injection. Again, his claim is newly ripe, but he is here attempting to seek relief in the wrong forum. C Campbell attempts to escape this problem by analogizing his claim to one challenging the competency of a prisoner to be executed. A competency claim under Ford is a habeas issue, and it does not become ripe until an execution date is set. Martinez-Villareal, 523 U.S. at 643, 118 S.Ct. 1618. Since that date often may not exist during the pendency of the original habeas, petition, the limitation on second- or-successive habeas petitions does not apply, so long as the second-in-time petition is filed as soon as it becomes ripe. Panetti, 551 U.S. at 945, 127 S.Ct. 2842. In Tibbetts, we rejected the argument that the Ford exception should extend to the petitioner’s claim that he was not “well enough physically to face execution.” 869 F.3d at 407 (italics in original). We reached this decision for two reasons. First, we noted that no authority supported the premise that physical health problems could render an execution absolutely unconstitutional in the same way insanity does. Id. Second, we pointed out that, at any rate, the petitioner’s health allegations were either too “unspecific” to be helpful or “were known when he filed his first habeas petition.” Id. Campbell attempts to distinguish Tibbetts by pleading with more specificity and arguing that the more serious versions of these ailments arose after his 2005 petition and were therefore unavailable at that time. This specificity cures the second problem identified in Tib-betts, but not the first. Since Tibbetts’s holding rested on the second problem, we did not fully articulate the reasoning behind the first problem. We clarify that position today. For at least twenty years, medical professionals have known that mental disorders are based in biology, just as are them physical counterparts. See Brian D. Shannon, The Brain Gets Sick Too, 24 St. Mary’s L.J. 365, 367 (1993); Betsey J, Grey & Gary E. Marchant, Biomarkers, Concussions, and the Duty of Care, 2015 Mich. St. L. Rev. 1911 (2015). But similarity in fact does not always equal similarity in law. In Tibbetts, we recognized that deteriorating mental health impairs a person’s “capacity to come to grips with his own conscience and deity.” Tibbetts, 869 F.3d at 407 (quoting Ford, 477 U.S. at 409, 106 S.Ct. 2595). Thus, a biological disease lodged' in the brain renders execution impermissible “Only of those who are unaware of the punishment they are about to suffer and why they are to suffer it.” Panetti, 551 U.S. at 957, 127 S.Ct. 2842 (quoting Ford, 477 U.S. at 422, 106 S.Ct. 2595 (Powell, J., concurring)). For this reason, a Ford claim is property raised in habeas, because, if successful, it wipes out the death sentence entirety. But the Court has not indicated that a biological disease lodged in any other part of the body has an impact on this moral calculus. Even a terminally ill cancer patient can often contemplate what is to come. This fact is why we said in Tibbetts that “we know of no comparable solicitude toward those who claim not to be well enough physically to face execution.” Tibbetts, 869 F.3d at 407. A person’s ability to reflect, repent, and grapple with his or her guilt is rarely impacted by physical sickness. Perhaps the medical community has catalogued a physical disease so horrible, so humiliating, and so degrading that the disease itself renders execution cruel and unusual, separate and apart from the inmate’s ability to engage in lucid' moral reasoning. But we are unaware of any, and Campbell has not presented one here. Y When placed in this context, it is clear that Campbell is seeking an injunction against a particular method of execution as applied to him, rather than an order vacating his death sentence entirely. See id. at 407 n.2. That relief is not available in a habeas action. He has therefore not pled any new-facts that, if proven, would absolutely prohibit his execution. Neither has he brought any newly ripe legal challenges that would, if successful, require us to vacate his death sentence. Therefore, his petition is second or successive, and we DENY Campbell’s motion to remand the case to the district court. Because it is second or successive, we have jurisdiction to evaluate whether § 2244(b) permits Campbell to proceed in the district court. Although Campbell does not ask this court for authorization to file a “successive” § 2254 petition, such a request would be pointless. Campbell does not rely on a new rule of constitutional law that applies retroactively to him. While he does rely on new facts relating to Ohio’s lethal injection protocols and his ongoing health problems, none of these facts concern his guilt of the underlying offenses or the legality of imposing the death sentence upon him. Therefore, he is not eligible to file a “successive” petition under § 2244(b). Consequently, as no further matters are outstanding, we DISMISS the petition.