NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0218n.06

No. 19-3361

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 01, 2022
DEBORAH S. HUNT, Clerk

WALTER RAGLIN,

      Petitioner-Appellant,

v.

TIM SHOOP, Warden,

      Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

Before: BOGGS, KETHLEDGE, and THAPAR, Circuit Judges.

KETHLEDGE, Circuit Judge. During an armed robbery, Walter Raglin pointed a gun at Michael Bany, looked him in the eye, and shot him in the neck, killing him. An Ohio jury convicted Raglin of aggravated murder and sentenced him to death. Ohio courts denied all of Raglin's challenges to his conviction and sentence. The district court likewise denied him habeas relief. We affirm.

I.

Late one night in December 1995, Walter Raglin and Darnell Lowery walked the streets of Cincinnati looking for someone to rob. Raglin carried a .380 caliber pistol. Lowery suggested they "hit" a drug runner or taxicab; Raglin disagreed, saying they should target someone less dangerous. Around 2 a.m., musician Michael Bany left a bar after his performance, walking from the bar to the parking lot, his bass guitar in one hand and his equipment in the other. As he reached his car, he set down his belongings, took out his keys, and began to unlock the car.

A voice behind Bany demanded all his money. He turned around and saw Raglin pointing a gun at him; Lowery stood watching nearby. Bany handed over the three $20 bills he had in his wallet. Raglin decided he wanted to steal Bany's car as well, but could not drive a stick shift—so he repeatedly asked Bany whether the car was automatic or manual. Bany said nothing and turned away from Raglin to pick up his equipment. As Bany turned back around, Raglin looked him in the eye and then shot him. Raglin and Lowery fled to a nearby house, where Raglin wiped his fingerprints off the gun and gave it to Lowery.

Five days later, an anonymous caller told Cincinnati police that Raglin had been involved in Bany's death. Police arrested Raglin, put him in an interview room, advised him of his *Miranda* rights, and began asking him questions. Raglin initially denied any involvement in Bany's killing. During a break in the questioning—during which the officers had left the room—Raglin broke down emotionally, called the officers back, and told them he had shot Bany. Raglin then repeated his confession on tape, saying "I looked at 'im in his eye an' he looked at me an' then I jus' shot 'im an' I ran."

A grand jury charged Raglin with aggravated murder with a death-penalty specification. A jury convicted Raglin and recommended the death penalty, which the trial court imposed. The Ohio Supreme Court affirmed Raglin's conviction and sentence. Raglin then moved to reopen that decision, arguing that his appellate counsel were ineffective. The Ohio Supreme Court summarily denied that motion.

Raglin thereafter filed a petition for a writ of habeas corpus in federal district court. The court stayed the case while Raglin pursued additional claims in state court; after those efforts failed, the district court reopened the case and allowed Raglin to amend his petition. There the case remained for another 13 years, as the district court denied Raglin's petition, certified several

questions therein for appeal, and denied Raglin's request to amend his petition to include a challenge to Ohio's lethal-injection protocol. In March 2018, the court entered judgment for the Warden, but overlooked Raglin's request for a certificate of appealability as to the denial of his method-of-execution claim. *See In re Campbell*, 874 F.3d 454, 461 (6th Cir. 2017); 28 U.S.C. § 2253(c). Raglin moved to alter or amend that judgment under Civil Rule 59(e), asking the court for a decision as to that request. The district court granted that certificate in March 2019. This appeal followed.

## II.

### A.

As an initial matter, the Warden argues that this appeal is untimely because Raglin filed it in April 2019—over a year after the district court denied him leave to amend his petition and entered judgment. Suffice it to say that we disagree: the district court's order granting Raglin's Rule 59(e) motion afforded him another 30 days to file a notice of appeal, which Raglin timely did. *See* Fed. R. App. P. 4(a)(4)(A)(iv).

### B.

We review de novo the district court's denial of Raglin's habeas petition. *See Cowan v. Stovall*, 645 F.3d 815, 818 (6th Cir. 2011). To obtain habeas relief, as relevant here, Raglin must show that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For purposes of habeas review, a state court's decision is "unreasonable" only when it is "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (internal quotation marks omitted).

1.

Raglin's first argument concerns his questioning by Cincinnati homicide detectives Bill Couch and Dan Argo. Specifically, he argues that, after he asked to see a lawyer, the detectives manipulated him to resume answering questions without one. *See generally Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

The detectives questioned Raglin on the night of January 3, 1996, five days after the murder. Initially the questioning was not recorded; later, as noted above, Raglin began to cry and called the officers back from a break to confess that he had shot Bany. Shortly thereafter, at 10:57 p.m., the officers began a recorded session of questioning, first reading Raglin his rights and expressly telling him that "[i]f you cannot afford a lawyer one will be appointed for you before any questioning if you wish"; that "[i]f you decide to answer questions now without an attorney present you still have the right . . . to stop answering at anytime until you talk to a lawyer"; and that "[i]f you want a lawyer you're allowed to have a lawyer at anytime that you want to." Raglin said, "can I jus' talk to one? I mean just for a minute?" Couch answered, "We can attempt to get a hold of an attorney, yes[,]" and assured Raglin that "it's no trouble at all, Walter." Raglin said, "I jus' wanna, yeah I wanted to talk to 'im"; Couch promptly ended the questioning and turned off the tape.

That was at 11:02 p.m. Three minutes later the officers turned the tape back on, explaining that Raglin wanted to resume answering questions. Then the officers again went over Raglin's rights with him and told him that "he can call an attorney" and that "he does not have to talk to us." Raglin said he understood those rights, and said that "ya'al didn' promise me nuttin'[,]" that "[n]obody tricked me, nuttin' like that[,]" and that "I don' want no attorney." Raglin then proceeded to confess that he shot Bany.

Raglin's claim now is that—when Couch told Raglin that he could "call an attorney" and when the officers apparently offered to provide him a phonebook—the officers implied that Raglin himself would need to pay for the lawyer. But that argument cherry-picks a sentence or two from the transcript and ignores the rest. The officers assured Raglin again and again that he could stop answering questions and be provided with a lawyer anytime he liked; and Couch specifically told him that "[i]f you cannot afford a lawyer one will be appointed for you[.]"

The Ohio Supreme Court looked at these same conversations and found "no evidence whatsoever that police said or did anything" to coerce Raglin into resuming the interview. *State v. Raglin*, 699 N.E.2d 482, 491 (Ohio 1998). That assessment of the record was reasonable, which means Raglin is not entitled to relief on this claim.

2.

Raglin argues that his trial counsel and his appellate counsel were constitutionally ineffective. To prevail on those claims, Raglin must show that his counsel's performance was constitutionally deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And as for the performance prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

a.

Raglin argues that his trial counsel was ineffective for several distinct reasons. We "cut to the merits" of those claims, since the unavoidably convoluted analysis as to whether those claims

are procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

(i)

By way of background, trials in capital cases are divided into a guilt phase and penalty phase—the latter being where the jury hears aggravating and mitigating evidence and decides whether to recommend a sentence of death. Here, the principal reason why Raglin thinks his trial counsel was ineffective is that counsel largely conceded Raglin's guilt of aggravated murder in favor of a more vigorous defense in the penalty phase. We accept the premise of Raglin's argument: during voir dire, for instance, Raglin's counsel told the venire that "basically . . . we will get to the second phase in this case. We will get to the mitigation phase. Which will mean that you will have already found Walter guilty of aggravated murder and aggravated robbery." And counsel chose not to have Raglin himself testify at trial or otherwise to present evidence that he killed Bany accidentally.

But Raglin's conclusion—that his counsel was ineffective—does not follow. Raglin overlooks the difference between capital cases and other kinds of trials. The Supreme Court has explained:

> Although such a concession [*i.e.*, of guilt] in a run-of-the-mine trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus. Attorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear. . . . Counsel therefore may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared.

*Florida v. Nixon*, 543 U.S. 175, 190–91 (2004).

That is what Raglin's trial counsel did here. Indeed his counsel was candid with the venire about it:

> This involves an aggravated robbery and an aggravated murder during the course of the robbery. And you're going to hear testimony and part of that testimony will be a statement that was given by Walter Raglin to the police. And we can't dispute that. So what I was trying to explain to you is, and there is a kind of method to my madness, if you will, that I don't believe I lost my way, but we weren't going to try to say something that was just absurd, you know, and where you may be more offended, you know, after the fact and say, well, gosh, if you know all of these things why in the world are you doing this. Because that can be offensive. Can you see my point?

This decision was obviously strategic, which means that we strongly presume that it was reasonable. *Strickland*, 466 U.S. at 689. Raglin has not overcome that presumption. His counsel knew that the jury would hear the recording of Raglin himself saying that he had looked Bany in the eye and then shot him at near point-blank range. Hence counsel could reasonably conclude that the defense would only lose credibility with the jury by disputing the murder charge. Meanwhile, Raglin's conduct was less egregious than the conduct in other cases where Ohio prosecutors have sought the death penalty. *See, e.g.*, *In re Ohio Execution Protocol*, 860 F.3d 881, 884 (6th Cir. 2017) (en banc). And Raglin was only 18 years old at the time of the offense, after "an extremely difficult and troubled childhood." *Raglin*, 699 N.E.2d at 497–98. His trial counsel therefore could have "reasonably decide[d] to focus on the trial's penalty phase[.]" *Nixon*, 543 U.S. at 191. Raglin has shown no basis for relief on this ground.

(ii)

Raglin's remaining arguments concerning the effectiveness of his trial counsel are likewise meritless. Raglin argues that counsel should have struck from the venire a juror who had seen Bany perform on the night when Raglin later shot him. But that juror repeatedly and specifically stated that she would be impartial in considering the evidence at trial. Counsel therefore was not

ineffective in choosing not to strike her. *See Allen v. Mitchell*, 953 F.3d 858, 865 (6th Cir. 2020). Nor has Raglin shown any prejudice from that decision. Nor, for some of the same reasons recited above, do we think that the Constitution compelled Raglin's counsel to retain a firearms expert for trial. Nor has Raglin shown any prejudice from that decision. Raglin's claim that his trial counsel was constitutionally ineffective for failing to object to certain parts of the prosecution's closing argument is likewise meritless. Nor do we think that Raglin's trial counsel performed deficiently at the mitigation phase. The performance of Raglin's trial counsel affords him no basis for relief here.

b.

Raglin also argues that his appellate counsel was ineffective for failing to make all the arguments (regarding the putative ineffectiveness of his trial counsel) that we just rejected above. We reject this claim as well.

3.

Raglin argues that the trial court should have instructed the jury on the lesser-included charge of involuntary manslaughter. In a capital case, a court must instruct the jury about a lesser-included offense if the evidence leaves "some doubt" about an element of the capital offense. *See Beck v. Alabama*, 447 U.S. 625, 637 (1980). In Ohio, a jury can convict a defendant of aggravated murder only if the defendant acted with the "purpose to cause the death of another." *State v. Jackson*, 836 N.E.2d 1173, 1197 (Ohio 2005).

The Ohio Supreme Court rejected this argument on the ground that, "[u]nder any reasonable view of the evidence, the killing of Bany was purposeful." *Raglin*, 699 N.E.2d at 488. We think that, on this record, a fairminded jurist could agree with that assessment.

4.

Raglin argues that the prosecutors' comments during closing arguments at both phases of his trial violated due process. A prosecutor's remarks violate due process only if they render the trial "fundamentally unfair." *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). And during closing argument a prosecutor may "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

Again we cut to the merits of this claim (as opposed to disputes as to which objections the trial court did or did not sustain). Raglin focuses on several comments in particular. First, the prosecutor told the jury that, when a person points a gun at another and demands all of the other person's money, "[t]he natural and reasonable inference from that is give me all your money or I'll kill you." That was simply an argument about what a jury might reasonably infer from the facts of the case, and thus does not amount to prosecutorial misconduct. *See id.* Second, the prosecutor suggested that if Raglin had fired the gun accidentally, he would have said as much in his recorded statement. That too was an argument about a reasonable inference from the other evidence in the case. Raglin also complains about a number of other comments by the prosecutor; but as to many of those comments, Raglin presents no developed argument; and the remaining arguments he makes in this vein are likewise meritless.

5.

Raglin also challenges the district court's dismissal of two of his claims as untimely. We review that decision de novo. *See Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012).

Raglin did not assert these claims until he filed his first amended petition—which he concedes made these claims facially untimely. *See* 28 U.S.C. § 2244(d). But Raglin contends that

these claims "relate back" to his original habeas petition, which was timely. For claims to relate back, however, they must share a "common core of operative facts" with a timely claim in the original petition. *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017). A new claim meets that test when, for example, it arises from the same body "of facts supporting" a ground for relief in the original petition and the petitioner seeks to refine their legal theory by way of amendment. *See Mayle v. Felix*, 545 U.S. 644, 661 (2005). So too when a petitioner merely seeks to add factual detail through an amended petition, such that the facts in the two documents differ "not in kind, but in specificity." *Cowan*, 645 F.3d at 819. But when the original petition does not contain the "operative facts out of which the amended claim could also be deemed to have arisen," the new claim does not relate back. *Hill v. Mitchell*, 842 F.3d 910, 925 (6th Cir. 2016). Mere factual overlap between old and new claims is therefore insufficient. *See id.*

Here, both of the untimely claims were based on police reports that two witnesses—Natasha Lowery and Ronnell Mumphrey—had said that, on the night of the shooting, Raglin came to Lowery's sister's apartment and was crying, vomiting, and asking whether the Lord would forgive him. The first untimely claim was that Raglin's trial counsel had rendered ineffective assistance by failing to interview Lowery and Mumphrey and to present their testimony at trial. As a basis for relation back, Raglin cites claims 3 and 23 of his original petition. Those claims both concerned the prosecutor's comments—in closing argument during the penalty phase—that Raglin had been "bragging and laughing" after the murder. Claim 3 included allegations that Raglin's trial counsel rendered ineffective assistance when he failed to object to these comments because facts about Raglin "bragging and laughing" after the murder were not in evidence. Claim 23 included allegations that the prosecutor engaged in misconduct when he made those same comments because, in effect, he "asked the jury to speculate on facts not in evidence." Those

claims contained a "common core of operative facts" with each other, but they share no common facts with the failure-to-investigate claim. *Watkins*, 854 F.3d at 850. Claims 3 and 23 thus do not contain the "operative facts out of which the amended claim could also be deemed to have arisen." *Hill*, 842 F.3d at 925. Raglin counters that the new claim and the older ones all concern "the issue of Raglin's remorse." Br. at 34. But a new claim must share a common core of operative facts— not merely a common "issue" or theme—to relate back to an earlier claim. *See Watkins*, 854 F.3d at 850.

The same analysis holds for the second untimely claim, which alleged that the prosecutor knowingly made a false argument when he said Raglin was "bragging and laughing" after the shooting. Lowery's and Mumphrey's statements were in the trial file; thus, Raglin argues, the prosecutor knew that Raglin was in fact remorseful. As a basis for relation back, Raglin again identifies claims 3 and 23 from the original petition, and argues that the old and new claims have in common "that the prosecution had engaged in misconduct with respect to Raglin's remorse for Bany's death." Br. at 78. But the question is whether the new claim could have "arisen" out of the facts in the original petition. *Hill*, 842 F.3d at 925. A showing that the prosecutor knowingly made a false argument depends upon the statements by Lowery and Mumphrey, as well as the prosecutor's mental state, knowledge of those statements, and other contents of the trial file (including an interview with an individual who stated that Raglin was in fact "laughing" and "showing off" after the shooting). *See Giglio v. United States*, 405 U.S. 150, 153 (1972). None of those alleged facts are recited in the original petition. Although the new claim has in common with the old claims the prosecutor's same statement, the similarity ends there; a mere factual point in common between old and new claims is not enough for the new claim to relate back. *See Hill*,

842 F.3d at 924. We therefore affirm the district court's dismissal of Raglin's new claims as untimely.

6.

We also reject Raglin's remaining claims—that the trial court's jury instructions during the guilt phase were improper, that the admission of testimony by rebuttal witnesses for the prosecution denied Raglin a fair trial, and that "cumulative" error did the same—for substantially the reasons stated by the district court. Indeed, we doubt that any reasonable jurist would debate the district court's denial of those claims—which means that Raglin likely should not have been granted a certificate of appealability as to them. *See Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

C.

Raglin challenges the district court's denial of his motion to reopen discovery, which we review for an abuse of discretion. *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009). A district court may permit discovery "if the petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate." *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quotation marks omitted).

To prove that Raglin intended to fire the gun and kill Bany, the prosecution hired an expert to examine Raglin's gun. That expert testified that the gun lacked a hair trigger. Raglin now asserts that his trial counsel never saw two statements that, in his view, suggest that the prosecution's expert examined the wrong gun—which in turn would leave open the possibility that the murder weapon did have a hair trigger. Raglin thus argues that the actual gun and the witness

statements could be material evidence that the state should have disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963).

Evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (cleaned up). Raglin does not meet that standard because his assertions regarding these statements are speculative at best. One of the statements comes from a witness who saw someone in the parking lot outside the bar that night put down a silver handgun, pick it back up, and take off running, which matches the story Raglin told to police. The other statement is from a then seventh-grader, who told police that Darnell Lowery gave him a gun after the murder. That statement lines up with the testimony of a Cincinnati policeman at trial, who found a .380 revolver that the youth had thrown aside while running from police. Raglin has not explained how these statements establish a "reasonable probability" that the prosecution's expert examined the wrong gun. Nor is there reason to think such a mistake would have made a difference at trial. Raglin never claimed to have shot Bany accidentally; instead, he repeatedly said that he looked Bany in the eye and shot him. The district court did not abuse its discretion when it denied Raglin additional discovery.

D.

Finally, Raglin argues that the district court should have granted him leave to amend his petition to include a claim challenging the method of his execution. We review that denial for an abuse of discretion. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998).

Here, the district court applied *In re Campbell*, 874 F.3d 454 (6th Cir. 2017) (per curiam), to hold that it could not hear Raglin's proposed method-of-execution challenge on habeas review. Raglin does not challenge the court's application of *Campbell*; instead, he says that we should

-13-

revisit *Campbell* after the Supreme Court's decision in *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019). But *Bucklew* did not decide what claims a petitioner can bring on habeas review. Indeed, the Court's only mention of habeas was a single statement: that, "if the relief sought in a 42 U.S.C. § 1983 action would foreclose the State from implementing the [inmate's] sentence under present law, then recharacterizing a complaint as an action for habeas corpus might be proper." 139 S. Ct. at 1128 (cleaned up). That dicta as to what the Court "might" do does not permit us to depart from our precedent. The district court did not abuse its discretion when it denied Raglin leave to amend his petition.

\* \* \*

The district court's judgment is affirmed.